13

Clackamas County Official Records
Sherry Hall, County Clerk

**2010-041666**

$47.00

01416241201000416660010013       07/13/2010 11:32:56 AM

M-TDA          Cnt=1  Stn=10  LESLIE
$5.00 $16.00 $16.00 $10.00

AFTER RECORDING RETURN TO:

**Foreclosure Department**
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 10 -0075247

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 06/19/2007, executed by DOUGLAS A JAMES AND EILEEN JAMES, Grantor(s), to FIDELITY NATIONAL TITLE COMPANY OF OREGON, Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded on 06/22/2007 as Recorder's fee/file/instrument/microfilm/reception number 2007-055116, Records of Clackamas County, Oregon, describing land. There in: as more fully described in said Deed of Trust.
Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____ JUL 0 8 2010 _____, 20____

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC

By: _____

State of ____ **CALIFORNIA** ____ )
                                  ) ss
County of ____ **VENTURA** ____ )

Leticia Quintana ____, Assistant Secretary

On ____ JUL 0 8 2010 ____, before me, ____ AHMAD AFZAL ____, notary public, personally appeared
____ Leticia Quintana ____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
** Assistant Secretary
WITNESS my hand and official seal.

Notary Public in and for the State of **CALIFORNIA**
Residing at _____ **VENTURA** _____
My Commission Expires: May 7, 2011

Ahmad Afzal

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Mortgage Electronic Registration Systems

EXHIBIT ___1___
PAGE ___1___

ORASGN (01/08)

15

Clackamas County Official Records
Sherry Hall, County Clerk
2010-041668



$57.00

01416243201000416680030031

07/13/2010 11:32:56 AM

F-NDE      Cnt=1  Stn=10  LESLIE
$15.00 $16.00 $16.00 $10.00

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by DOUGLAS A'JAMES AND EILEEN JAMES, as grantors, to FIDELITY NATIONAL TITLE COMPANY OF OREGON, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, dated 06/19/2007, recorded 06/22/2007, in the mortgage records of Clackamas County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 2007-055116, covering the following described real property situated in said county and state, to wit:

SEE ATTACHED LEGAL DESCRIPTION

PROPERTY ADDRESS:  30366 SW RUTH STREET #70
WILSONVILLE, OR 97070

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $2,863.14 beginning 04/01/2010; plus late charges of $115.24 each month beginning 04/01/2010 payment plus prior accrued late charges of $-230.48; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $336,479.26 with interest thereon at the rate of 7 percent per annum beginning 03/01/2010 plus late charges of $115.24 each month beginning 04/01/2010 until paid; plus prior accrued late charges of $-230.48; plus advances of $0.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| | |
|---|---|
| NOTICE OF DEFAULT AND ELECTION TO SELL<br>RE: Trust Deed from<br>**DOUGLAS A JAMES and EILEEN JAMES,**<br>Grantor<br>To<br>**RECONTRUST COMPANY, N.A.,**<br>Trustee      TS No. 10 -0075247 | For Additional Information:<br>Please Contact<br>**Foreclosure Department**<br>**RECONTRUST COMPANY, N.A.**<br>**RECONTRUST COMPANY, N.A.**<br>**1800 Tapo Canyon Rd., CA6-914-01-94**<br>**SIMI VALLEY, CA 93063**<br>**(800)-281-8219** |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

*ORNOD (01/10)*

EXHIBIT  2
PAGE  1

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Friday, November 19, 2010, at the following place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse near the arbor, 807 Main St., Oregon City, Clackamas County, OR

, which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.

DANIEL RODRIGUEZ  Team Member

STATE OF_____CALIFORNIA_____

COUNTY OF_____VENTURA_____ ) ss.

On _____JUL 0 8 2010_____, before me, _____AHMAD AFZAL_____, notary public, personally appeared _____DANIEL B RODRIGUEZ_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. *Team Member*

WITNESS my hand and official seal.

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC – CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

Notary Public for _____CALIFORNIA_____      (SEAL)
My commission expires: May 7, 2011

Ahmad Afzal

THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.

ORNOD (01/10)

2

EXHIBIT  2
PAGE  2

# EXHIBIT "ONE"

Unit 70, VILLAGE ESTATES CONDOMINIUM, Supplemental Plat No. 1: Annexation of Stage 2, in the City of Wilsonville, Clackamas County, Oregon, TOGETHER WITH with the limited common elements and the undivided interest in the general common elements appurtenant thereto, as set forth in Declaration Submitting Village Estates Condominium to Condominium Ownership recorded September 1, 2006, Recorder's No. 2006-081363 and Supplemental Declaration Submitting Stage 2, recorded October 31, 2006, Recorder's No. 2006-100981

③

EXHIBIT ___2___
PAGE ___3___

**Clackamas County Official Records** 2011-011938
**Sherry Hall, County Clerk**



$57.00

0147654120110011938003036

F-MDR     Cnt=1  Stn=4  KANNA        02/22/2011 12:30:18 PM
$15.00 $16.00 $16.00 $10.00

**Return to:**
**RECONTRUST COMPANY**
**400 National way**
**SIMI VALLEY, CA 93065**
TS No. 10 -0075247
TSG No. 100395598ORGSI

### RESCISSION OF NOTICE OF DEFAULT

Reference is made to that certain Trust Deed in which DOUGLAS A JAMES AND EILEEN JAMES was grantor, FIDELITY NATIONAL TITLE COMPANY OF OREGON was Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was beneficiary, said Trust Deed recorded on 06/22/2007 or as fee/file/instrument/microfilm/section No. 2007-055116 of the mortgage of records of Clackamas County, Oregon and conveyed to the said Trustee the following real property situated in said county:

SEE ATTACHED LEGAL DESCRIPTION

Commonly Known As:     30366 SW RUTH STREET #70
                                         WILSONVILLE, OR 97070

A notice of grantor's default under said Trust Deed, containing the beneficiary's or Trustee's election to sell all or part of the above described real property to satisfy grantor's secured by said Trust Deed was recorded on 07/13/2010, in said mortgage records or as fee/file/instrument/microfilm No. 2010-041668: thereafter by reason of the default being cured as permitted by the provision of Section 86.753, Oregon Revised Statutes, the default described in said notice of default has been removed, paid, and overcome so that said Trust Deed should be reinstated.

Now therefore, notice is hereby given that the undersigned Trustee does hereby rescind, cancel, and withdraw said notice of default and election to sell; said Trust Deed and all obligations secured thereby hereby are reinstated and shall be and remain in force and effect the same as if no acceleration had occurred and as if said notice of default had not been given; it being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to said notice so recorded.

IN WITNESS WHEREOF, the undersigned Trustee has hereunto set his hand and seal: if the undersigned is a corporation, it has caused its corporate name to be signed and its corporate seal to be affixed hereunto by its officers duly authorized thereunto by order of its Board of Directors.

EXHIBIT ___3___
PAGE ___1___

DATED: __FEB 1 8 2011__

RECONTRUST COMPANY, N.A.

CHRISTINA BALANDRAN    ASSISTANT SECRETARY

State of _____CALIFORNIA_____ )
County of _____VENTURA_____ ) ss.

On ___FEB 1 8 2011___, before me, _____E L HOWARD_____, notary public, personally appeared _____CHRISTINA BALANDRAN_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

✱ Asst. Secretary

WITNESS my hand and official seal.

E. L. Howard

E. L. HOWARD
COMM. #1901815
Notary Public-California
VENTURA COUNTY
My Comm. Exp. AUG 28, 2014

Notary Public in and for the State of __CALIFORNIA__
Residing at __VENTURA__
My Commission Expires: __AUG 2 8 2014__

ORRESCISNNOD (07/07)

EXHIBIT ___3___
PAGE ___2___

**EXHIBIT "A"**

**REF. NO.: 10-0075247**

UNIT 70, VILLAGE ESTATES CONDOMINIUM, SUPPLEMENTAL PLAT NO. 1: ANNEXATION OF STAGE 2, IN THE CITY OF WILSONVILLE, CLACKAMAS COUNTY, OREGON, TOGETHER WITH WITH THE LIMITED COMMON ELEMENTS AND THE UNDIVIDED INTEREST IN THE GENERAL COMMON ELEMENTS APPURTENANT THERETO, AS SET FORTH IN DECLARATION SUBMITTING VILLAGE ESTATES CONDOMINIUM TO CONDOMINIUM OWNERSHIP RECORDED SEPTEMBER 1, 2006, RECORDER'S NO. 2006-081363 AND SUPPLEMENTAL DECLARATION SUBMITTING STAGE 2, RECORDED OCTOBER 31, 2006, RECORDER'S NO. 2006-100981

FNTIC FORM 27-195-94 (3/94)
Reprinted (7/97)

Fidelity National Title Insurance Company

8

GUARANTEE – COMBINATION FORM
OREGON

EXHIBIT ___3___
PAGE ___3___

FILED'11 MAR 23 15:37USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELTON R. BERTRAND; ET AL.,

              Plaintiffs,

      v.

SUNTRUST MORTGAGE, INC.,
a Virginia corporation; ET AL.,

              Defendants.

Civil No. 09-857-JO

<u>OPINION AND ORDER</u>

Terrance J. Slominski
SLOMINSKI & ASSOCIATES
Commerce Plaza
7150 S.W. Hampton Street, Suite 201
Tigard, OR  97223

  Attorney for Plaintiffs

Robert D. Newell
Blake J. Robinson
DAVIS WRIGHT TREMAINE, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, OR  97201-5630

EXHIBIT ___4___
PAGE ___1___

Rochelle L. Stanford
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P. O. Box 17935
San Diego, CA 92177-0935

Attorneys for Defendants

JONES, Judge:

Plaintiffs Shelton and Rebecca Bertrand bring this action against defendants SunTrust

Mortgage, Inc., First American Title Insurance Company, and Federal National Mortgage

Association, seeking to void a foreclosure sale of their home in September 2009, and to recover

damages for breach of contract.

The case is before the court on defendants' motions for summary judgment (## 27, 33). I

initially took the motions under advisement in November 2010, after a "veritable tsunami" of

investigation into and litigation over mortgage foreclosure practices broke loose on a national

scale. Because of significant controversy in the foreclosure field over the role of Mortgage

Electronic Registration Systems, Inc. ("MERS"), and in view of a decision that Judge King had

recently issued in Rinegard-Guirma v. Bank of America, et al., CV No. 10-1065-PK, I deferred

ruling on the summary judgment motions to permit the parties to submit supplemental briefing to

distinguish this case from Rinegard-Guirma. That briefing is complete.

After reviewing the parties' submissions and the developing case law in this court and in

other jurisdictions, for the reasons explained below I conclude that summary judgment is

appropriate and therefore grant defendants' motions.

EXHIBIT   4
PAGE   2

## FACTUAL BACKGROUND

The following facts are drawn from the parties' concise statements of material facts, which largely are undisputed; any material disputed facts will be discussed in context.

On January 2, 2008, plaintiffs gave a Note to Northwest Mortgage Group, Inc. ("NW Mortgage"), in which they promised to pay NW Mortgage the principal amount of $339,500 plus interest accruing at 6.375% per annum. Plaintiffs' monthly payments were to be $2,118.04. The Note provided that "[t]he Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Declaration of Blake Robinson in Support of Defendants SunTrust Mortgage, Inc., and Federal National Mortgage Association's Motion for Summary Judgment ("Robinson Decl."), Exhibit ("Exh.") 1.[1]

On January 2, 2008, plaintiffs also executed a Deed of Trust. The Deed of Trust lists plaintiffs as borrower, NW Mortgage as lender, Ticor Title ("Ticor") as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, acting as NW Mortgage's nominee. The Deed of Trust was recorded on January 8, 2008. Robinson Decl., Exh. 2, p. 1. The Deed of Trust secured the Note. Robinson Decl., Exh. 2, p. 2.

As pertinent, in the Deed of Trust plaintiffs conveyed to Ticor, "in trust, with power of sale," property located at 1941 Buck Street, West Linn, OR 97068. The Deed of Trust also provided: (1) that the lender could accelerate the loan secured by the Deed of Trust if plaintiffs breached any covenant or agreement in the Deed of Trust; (2) that plaintiffs would timely make all payments due under the Note; that MERS "has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security

---

[1]         Plaintiffs dispute the quoted language, but the Note speaks for itself.



EXHIBIT __4__
PAGE __3__

Instrument." Robinson Decl., Exh. 2.[2] The Deed of Trust further provides that if the lender invokes the power of sale, "Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law. . . ." Id.

On January 3, 2008, plaintiff Shelton Bertrand signed a Notice of Assignment, Sale or Transfer of Servicing rights, which stated that effective March 1, 2008, the right to receive plaintiffs' payments on the Note would be transferred from NW Mortgage to defendant SunTrust Mortgage, Inc. ("SunTrust"). Declaration of Kimberly Blankenship in Support of Motion for Summary Judgment ("Blankenship Decl."), Exh. 1.

From July 2008 through the date of the foreclosure sale in September 2009, plaintiffs did not make the monthly payments required by the Note. Blankenship Decl., ¶ 3.

In November 2008, several actions took place. Jackie Ballos, an officer of beneficiary MERS,[3] executed an Assignment of Deed of Trust, which transferred all beneficial interest in the Deed of Trust and Note from MERS to SunTrust. The Assignment was recorded in Clackamas County on November 10, 2008. Robinson Decl., Exh. 3. Ms. Ballos, as a vice president of SunTrust,[4] also executed an Appointment of Successor Trustee, appointing defendant First American Title Insurance Company ("First American") c/o ForeclosureLink as successor trustee to Ticor. The Appointment of Successor Trustee was recorded in Clackamas County on November 10, 2008. Robinson Decl., Exh. 4.

Also on November 10, 2008, ForeclosureLink, as agent for First American, recorded in Clackamas County a Notice of Default and Election to Sell, which ForeclosureLink prepared on

---

[2]   Plaintiffs dispute the quoted statement, but again, the language in the Deed of Trust speaks for itself.

[3]   Plaintiffs question whether Ms. Ballos was an officer of MERS, but the evidence of record, Ms. Ballos' Declaration, is uncontested and establishes that she was an authorized agent of MERS. Declaration of Jackie Ballos, ¶ 2.

[4]   Plaintiffs also question whether Ms. Ballos was authorized to act on behalf of SunTrust, but again, Ms. Ballos' Declaration on this point is uncontested and establishes that she was a vice president of SunTrust when she executed the Appointment of Successor Trustee. Declaration of Jackie Ballos, ¶ 3.

4 - OPINION AND ORDER

EXHIBIT   4
PAGE   4

November 5, 2008. Affidavit of Marsha Townsend in Support of First American's Motion for Summary Judgment ("Townsend Aff."), ¶ 9. The Notice of Default stated that plaintiffs were in default under the Deed of Trust for failure to pay when due the amount owing on July 1, 2008, and that First American was foreclosing the Deed of Trust. The Notice also stated that under the original Deed of Trust dated January 2, 2008, plaintiffs were the grantor, Ticor was the trustee, and MERS was the beneficiary as nominee for the lender. See Robinson Decl., Exh. 5, Townsend Aff., Exh. D. Two mailing addresses are listed in the Notice of Default, one for "First American Title Insurance Company, C/o ForeclosureLink, Inc., 4401 Hazel Ave., Ste. 225, Fair Oaks, CA 95628," Robinson Decl., Exh. 5, p. 1, and the second for SunTrust, at the same address as First American. The Notice directs inquiries to the latter entity at the same Hazel Ave. address. Robinson Decl., Exh. 5, p. 2.

ForeclosureLink next prepared a Trustee's Notice of Sale and a Notice pursuant to ORS Chapter 86 and on November 24, 2008, mailed the notices to plaintiffs and other parties entitled to receive notice. Townsend Aff., ¶ 5 and Exh. E. On March 6, 2009, an Affidavit of Mailing Notice of Sale, with a Trustee's Notice of Sale and Notice[5] attached, was recorded in Clackamas County. Robinson Decl., Exh. 6, pp. 1-3; Townsend Aff., Exh. E. The Trustee's Notice of Sale lists the same Hazel Ave. address that was included in the Notice of Default, and lists plaintiffs as grantor, Ticor as trustee, and MERS, as nominee for the lender, as beneficiary. Robinson Decl., Exh. 6, p. 2.

On July 24, 2009, plaintiffs' filed their initial complaint in this court, seeking, among other things, to enjoin the sale. They did not pursue any temporary relief to stop the sale, and on September 21, 2009, First American sold the property to SunTrust for $372,336.88. The trustee's deed, dated September 25, 2009, was recorded in Clackamas County on September 29, 2009. Robinson Decl., Exh. 7. On the same date, a statutory warranty deed, which conveyed the

---

[5]    The "Notice" warns of the impending foreclosure sale, and states at the top of the page in large print: "YOU[] ARE IN DANGER OF LOSING YOUR PROPERTY IF YOU DO NOT TAKE ACTION IMMEDIATELY." Townsend Aff., Exh. E, pp. 7-8.

5 - OPINION AND ORDER

EXHIBIT  4
PAGE  5

property from SunTrust to Federal National Mortgage Association ("Fannie Mae") was recorded in Clackamas County.

On December 10, 2009, plaintiffs filed their First Amended Complaint, seeking to set aside the sale and to recover damages.

## STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

## DISCUSSION

Defendants move for summary judgment on plaintiffs' claims, contending that the foreclosure sale on September 21, 2009, was valid in both documentation and process.

Plaintiffs oppose summary judgment, challenging the foreclosure sale on two basic premises. Plaintiffs' primary contention is that MERS could neither act as beneficiary under the Deed of Trust nor assign its beneficial interest to SunTrust. Plaintiffs also claim that defendants failed to follow the statutory procedures required for a nonjudicial foreclosure. As explained below, neither of plaintiffs' claims has merit.

6 - OPINION AND ORDER

EXHIBIT ___4___
PAGE ___6___

1.    MERS Properly Served as Beneficiary Under Oregon Law.

Plaintiffs' central premise, that MERS lacked authority to act as beneficiary or assign its

beneficial interest to SunTrust is not supported by the facts or the law. The Deed of Trust at

issue specifically states:

> MERS is a separate corporation that is acting solely as a nominee for Lender and
> Lender's successors and assigns. MERS is the beneficiary under this Security
> Agreement.

Robinson Decl., Exh. 2, p. 1. In signing the Deed of Trust, plaintiffs acknowledged that:

> Borrower understands and agrees that MERS holds only legal title to the interests
> granted by Borrower in this Security Instrument, but, if necessary to comply with
> law or custom, MERS (as nominee for Lender and Lender's successors and
> assigns) has the right: to exercise any or all of those interest, including, but not
> limited to, the right to foreclose and sell the Property; and to take an action
> required of Lender including, but not limited to, releasing and canceling this
> Security Instrument.

Robinson Decl., Exh. 2, p. 2.

Courts in several jurisdictions have held that regardless of whether MERS is an economic

beneficiary (one of the issues plaintiffs raise in this case), the above-quoted language grants

MERS the power to initiate foreclosure and to assign its beneficial interest under the Deed of

Trust. See, e.g., Germon v. BAC Home Loans Servicing, L.P., 2011 WL 719591 at *2 (S.D.Cal.

Feb. 22, 2011) ("Upon review of the language of the Deed of Trust, it is clear that MERS had the

legal right to initiate nonjudicial foreclosure and could assign such right"); Santarose v. Aurora

Bank FSB, 2010 WL 2232819 at *5 (S.D. Tex. June 2, 2010) ("By the plain language of the

Deed of Trust, MERS had the right to foreclose the property."); see also Jones v. Wells Fargo

Bank, 2011 WL 683887 at *1 (D.Ariz. Feb. 18, 2011) (same); Vawter v. Quality Loan Service

Corporation of Washington, 2010 WL 1629355 at *9 (W.D.Wash. April 22, 2010) (same).

Recently, Judge Hogan of this court recognized that MERS' role as beneficiary under a

deed of trust with the authority to assign those beneficial rights "does not necessarily mean that

the arrangement violates the Oregon Trust Deed Act such that foreclosure proceedings could not

EXHIBIT    4
PAGE    7

be initiated by MERS or its substitute trustee." <u>Burgett v. Mortgage Electronic Registration</u> <u>Systems, Inc.,</u> 2010 WL 4282105 at *2 (D.Or. Oct. 20, 2010). Judge Hogan explained:

> Under ORS 86.705(1), a "'beneficiary' means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who shall not be the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)." Plaintiff contends that MERS cannot meet this definition because there is no evidence that the trust deed was made to benefit MERS. However, the trust deed specifically designates MERS as the beneficiary.

<u>Burgett, id.</u> at *2. In <u>Burgett,</u> as in other cases now pending in this court, the problem with the nonjudicial foreclosure proceeding was not MERS' involvement in the foreclosure *per se*; rather, it was the failure of the foreclosing parties to record all necessary assignments as required for a nonjudicial foreclosure under Oregon law. <u>See, e.g.,</u> <u>Burgett, id.</u> at *3 ("The problem that defendants run into in this case is an apparent failure to record assignments necessary for the foreclosure"); <u>see also</u> <u>Ekerson v. Mortgage Electronic Registration System, et al.,</u> CV No. 110178-HU (Temporary Restraining Order, Feb. 11, 2011)(Brown, J.); <u>Barnett v. BAC Home</u> <u>Loan Servicing, L.P., et al.,</u> CV 11-213-ST(Temporary Restraining Order, Feb. 23, 2011)(Brown, J.).

As demonstrated by the evidence of record, in this case all assignments were recorded in due course, and plaintiffs do not contend otherwise. Consequently, to the extent plaintiffs challenge the foreclosure sale on the basis of MERS' involvement, plaintiffs' claims are without merit.

EXHIBIT ___4___
PAGE ___8___

2.    Defendants' Compliance with Statutory Procedures.

Plaintiffs next assert that the Notice of Default and Notice of Sale failed to comply with

the requirements of the Trust Deed Act and were inadequate to permit the nonjudicial

foreclosure. Specifically, plaintiffs challenge the foreclosure documents on this basis:

> Defendant, by its own admission, stated that "Notice of Default and Election to
> Sell and Trustee's Notice of Sale specified ForeclosureLink, Inc." . . . Although
> Defendant contends that ForeclosureLink is an agent, the notice goes on to state
> that inquiries are to be directed [t]o SunTrust c/o ForeclosureLink, 4401 Hazel
> Ave, Ste 225, Fair Oaks, CA 95628. . . Simply put, the trustee's address, which is
> required to be there and be set forth, was not given by Defendant First American
> Title; thus, the Notice of Default and Notice of Sale fail to comply with [] ORS
> 86.735 and 86.745 and are inadequate.

Plaintiffs' Response to First American's Motion, p. 6; Plaintiffs' Memorandum in Support of

Response to SunTrust's Motion, p. 6.

ORS 86.745, which contains the requirements on which plaintiffs rely, provides that the

"notice of sale shall set forth: (1) The names of the grantor, trustee and beneficiary in the trust

deed, and the mailing address of the trustee." ORS 86.735, on which plaintiffs also rely,

provides in relevant part:

> The trustee may foreclose a trust deed by advertisement and sale . . . if:
>
>         (3) The trustee or beneficiary has filed for record in the county clerk's
> office in each county where the trust property, or some part of it, is situated, a
> notice of default containing the information required to ORS 86.745 and
> containing the trustee's or beneficiary's election to sell the property to satisfy the
> obligation. . . .

ORS 86.735(3).

Plaintiffs do not dispute that they were in default on their payments. Nor do they

challenge the trustee's or the beneficiary's actions in other respects under the Trust Deed Act.

Instead, they focus entirely on the alleged deficiency in the mailing address of the trustee in both

the notice of default and the notice of sale.

The Notice of Default and Election to Sell states that both the beneficiary (SunTrust) and

the trustee (First American) have elected to foreclose the Trust Deed. Robinson Decl., Exh. 5,

p. 2. The address of both entities, c/o ForeclosureLink, Inc., 4401 Hazel Ave., Ste 225, Fair

9 - OPINION AND ORDER

EXHIBIT   4
PAGE      9

Oaks, CA 95628, is set forth in the Notice of Default. Similarly, the Trustee's Notice of Sale states that both the beneficiary (SunTrust) and the trustee (First American) have elected to sell the real property. Robinson Decl., Exh. 6, p. 2. Again, the address of both entities, c/o ForeclosureLink, Inc., 4401 Hazel Ave., Ste 225, Fair Oaks, CA 95628, is set forth in the Notice of Sale. ForeclosureLink, Inc.'s, address, again the Hazel Ave. location, also is set forth in the Affidavit of Mailing Notice of Sale. All documents were duly recorded.

Plaintiffs evidently object to SunTrust's and First American's use of an agent and the agent's address, but nothing in the Trust Deed Act prohibits use of an agent. And while plaintiffs may be correct that the Trust Deed Act "'represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property,'"[6] nothing in the documentation of this loan and the subsequent foreclosure violates the letter or spirit of that statutory scheme.

I conclude that the documents in question adequately set forth the names of the grantor, trustee, and beneficiary, as well as the mailing address of the trustee, as required by the Trust Deed Act, and that the documents therefore complied with the Act. Consequently, plaintiffs' claim that the foreclosure sale should be invalidated due to inadequate documentation is without merit.

## CONCLUSION

Defendants' motions for summary judgment (## 27, 33) are GRANTED. Any other pending motions are denied as moot and this action is dismissed with prejudice.

DATED this 23rd day of March, 2011.

ROBERT E. JONES
U.S. District Judge

---

[6]    Plaintiffs' Memorandum in Support of Response, p. 5 and Plaintiffs' Response to First American's Motion, p. 5 (both quoting Staffordshire v. Cal-Western Reconveyance, 149 P.3d 150, 157, 209 Or. App. 528 ( Or. 2006)).

10 - OPINION AND ORDER

EXHIBIT    4
PAGE    10

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF CLACKAMAS

REBECCA NIDAY (fka REBECCA LEWIS, )    No. CV-10-02-0001
                                )
                                )    COA No. A147430
        Plaintiff-Appellant,    )
                                  )
     v.                             )
                                  )
GMAC MORTGAGE, LLC, et al.        )
                                  )
        Defendants-Respondents.    )

### TRANSCRIPT OF PROCEEDINGS

     BE IT REMEMBERED that the above-entitled matter came

on for hearing before the Honorable Henry C. Breithaupt,

Judge of the Circuit Court for the County of Clackamas,

State of Oregon, commencing on the 28th day of October,

2010.

**Appearances:**

Appearing in behalf of the Plaintiff
Elizabeth R. Lemoine, Attorney at Law
W. Jeffrey Barnes, Attorney at Law

Appearing in behalf of the Defendant
William G. Fig, Attorney at Law

TRANSCRIBED FROM ELECTRONIC RECORDING BY:
ROBYN M. ANDERSON
3351 SW REDFERN PLACE
GRESHAM, OREGON 97080

ANDERSON ASSISTANCE
OFFICIAL TRANSCRIBER

(503) 618-9938

EXHIBIT 5
PAGE 1

EXHIBIT 5

PAGE 2

## GENERAL INDEX

**VOLUME 1 – PROCEEDINGS OF OCTOBER 28, 2010**........ 1

Motion for Summary Judgment........................ 1

EXHIBIT  5
PAGE  2

EXHIBIT  5
PAGE  4

October 28, 2010

(Judge Breithaupt)

11:19:27 a.m.

# P R O C E E D I N G S

## MOTION FOR SUMMARY JUDGMENT

THE COURT:  We're on the record now in Niday,

Niday?

MS. LEMOINE:  Niday.

MR. BARNES:  Niday, Your Honor.

THE COURT:  Niday vs. GMAC Mortgage LLC and

others.

Motion by the defendants.  I've read your

papers, and I understand that the argument here, I

suppose, relates to how under Oregon law, and in

particular Chapter 86 -- I'm assuming Chapter 86 and the

law relating to foreclosure by sale of trustees.

The documentation of the trust deed in question

here, which includes a designation of so-called MERS, as a

-- well, describes MERS; and we have a lender, and we have

a trustor or borrower.  There is a fight about how does

this all fit into the foreclosure by sale rules in Oregon.

And let me hear from the moving party first,

briefly I would say.

Then I'd like to switch to the opposing party to

get a point-by-point description of what they think the

EXHIBIT  5

PAGE  5

1  deficiencies, if any, are here in the process, and then

2  I'll come back to you.

3          MR. FIG:  That's fine, Your Honor.

4          THE COURT:  You're welcome to remain seated.

5          MR. FIG:  William Fig on behalf of the

6  defendants.  We did file this motion.  Plaintiff's

7  complaint was for basically two causes of action; one was

8  a temporary restraining order or a restraining order to

9  stop the pending foreclosure sale.  And the other was for

10  a declaration -- seeking a declaration that the defendants

11  had no standing to proceed forward with the foreclosure

12  sale under Oregon law.

13          THE COURT:  Now, how many defendants are there?

14          MR. FIG:  There are, I believe, three, Your

15  Honor.  Let me see for certain.  There's GMAC Mortgage,

16  there's MERS, and then there's Executive Trustee Service.

17          THE COURT:  And is the defendant's motion that

18  none of these parties have standing?

19          MR. FIG:  Well, I believe the defendant can

20  speak to that --

21          THE COURT:  I was sort of glancing at the

22  defendant for that question.

23          MR. FIG:  Oh, I'm sorry, Your Honor.

24          MS. LEMOINE:  He's asking the question, though.

25  Elizabeth Lemoine, Your Honor, for plaintiffs in this

EXHIBIT 5
PAGE 6

1 matter actually, and the answer is that yes, we are

2 seeking -- I'm sorry, your question again was? I want to

3 phrase it properly.

4       THE COURT: Well, if it's a standing question

5 and there are three defendants, is it none of these

6 defendants has standing?

7       MS. LEMOINE: That is correct, Your Honor, but

8 part of the difficulty is, is that MERS is the one that

9 transferred the --

10       THE COURT: I just -- that's all I want is --

11       MS. LEMOINE: Yeah.

12       THE COURT: -- none of the defendants have

13 standing?

14       MS. LEMOINE: That's correct, Your Honor.

15       THE COURT: Okay. Back to Mr. Fig, please.

16       MR. FIG: Thank you, Your Honor, and so the

17 claim was or the declaration sought was that none of the

18 defendants have standing, as we just clarified.

19       We filed a motion to stay that or to dismiss

20 plaintiff's claims saying that they can't state a claim

21 for relief; in other words, that we do have standing.

22       I think it's important for the Court in

23 considering this matter to note what this is not. This is

24 not a judicial foreclosure of a trust deed, and there is

25 not an assignment of the trust deed involved in this case.

EXHIBIT 5

PAGE 1

1     And the plethora of case law cited by plaintiff,

2  including the _Landmark_ case, which they rely very heavily

3  on, involves either a judicial action where MERS is trying

4  to become involved in a judicial action or there's an

5  assignment of the trust deed by MERS to another party who

6  then attempts to foreclose on the trust deed, and the

7  issue is whether or not MERS has the authority to assign

8  the trust deed to that other party.

9     That's what the vast majority of the case law

10 deals with on this particular topic.

11     In contrast what we're dealing here, as the

12 Court has properly pointed out, is whether these

13 defendants are entitled to foreclosure, particularly non-

14 judicially, particularly under statute ORS 86.735.

15     THE COURT:  Mm-hmm.

16     MR. FIG:  And Your Honor, the statute 86.735 has

17 four requirements.  I'll skip requirement No. 1, because I

18 think that's what we're really fighting over here, and I

19 believe it is true that Items No. 2, 3, and 4, are not at

20 issue in this case.

21     In other words, I believe the reply or the

22 response brief either admits that grantor is in default or

23 that that's not an issue in this particular instance.

24 There's been no issue raised as to whether or not the

25 notice of sale was properly recorded in the county deeds

EXHIBIT  5
PAGE  8

1  and so on and so forth.

2      THE COURT:  Let me just ask:  Ms. Lemoine, any

3  issue on 2, 3, and 4?

4      MR. FIG:  Do you have a copy -- here's a copy.

5      MS. LEMOINE:  Oh, actually, I do, yes.  Any

6  issues on 2, 3, and 4.

7      MR. BARNES:  Mm-hmm, there is.

8      THE COURT:  Excuse me.  Who is counsel?

9      MS. LEMOINE:  Your Honor, we are actually co-

10 counsel.  This is Mr. Jeff Barnes, he is admitted *pro hac*

11 *vice* in this particular matter, it's in the court file,

12 and he is here today to assist and to argue actually the

13 main points of the motion.

14     THE COURT:  Well, again, let me ask:  Are you

15 asserting, and did you assert in your response that there

16 were problems under 2, 3, and 4?  2, 3, or 4 or 86.735.

17 And if so what are the problems.

18     MR. BARNES:  May I?

19     MR. FIG:  Your Honor, I think they have to pick

20 who's going to argue.

21     THE COURT:  Yes, I agree.  Who's going to argue

22 this?

23     MS. LEMOINE:  Mr. Barnes is going to argue here.

24     MR. BARNES:  Thank you, Your Honor.  If we're

25 talking about 86.735, Foreclosure by advertisement and

EXHIBIT  5

PAGE  9

1 sale, Subsection (2) --

2 THE COURT: Not "if," that's what we're talking

3 about.

4 MR. BARNES: I'm just -- because of all the --

5 the answer, I just wanted to make sure, Your Honor. Thank

6 you.

7 Subsection (2), there is a default by the

8 grantor or other person owing an obligation, et cetera.

9 No, we did not point that out in the response here

10 specifically as a problem with that statute. I think we

11 pointed out in our complaint, though that --

12 THE COURT: Complaints don't count at this

13 stage. Do you have in this record anything that raises a

14 question of fact about default?

15 MR. BARNES: I would say that we do because a

16 default's being claimed by a non-owner of the --

17 THE COURT: No. I don't care who the owner of

18 the obligation is. Is there anything in this record that

19 -- Mr. Fig, do you have something that indicates there's a

20 default?

21 MR. FIG: Yes, Your Honor, we -- I'm sorry.

22 THE COURT: Thank you.

23 MR. FIG: It's just habit.

24 THE COURT: Do you have any evidence that

25 indicates there is not a default; in this record before

EXHIBIT 5
PAGE 10

1   me, what if any evidence do you have that indicates that

2   there is not a default?

3         MR. BARNES: Not at this time, Your Honor.

4         THE COURT: Okay. So 2's not an issue. 3?

5         MR. BARNES: 3 and 4 are not issues as well.

6         THE COURT: Okay. So neither 2, 3, or 4 are

7   issues.

8         Mr. Fig, back to you.

9         MR. FIG: Thank you, Your Honor.

10         So what we're really talking about when we get

11   down to Subsection (1) of that statute that reads, "The

12   trust deed, any assignments of the trust deed by the

13   trustee or beneficiary, and any appointment of the

14   successor trustee are recorded in the mortgage record" in

15   Clackamas -- or the county that we're in.

16         We have provided a copy that's attached to my

17   exhibit that shows that there's an appointment of a

18   successor trustee and that successor trustee was properly

19   designated, and then that in fact the appointment of a

20   successor trustee was recorded in the county records.

21         So from plaintiff's position we can take any

22   assignment of the trustee out of the equation and what

23   we're really talking about here --

24         THE COURT: You're saying because there was no

25   assignment of the trust deed.

EXHIBIT 5

PAGE 11

1          MR. FIG:  Let me back up.  There was an

2    assignment of a successor trustee, in other words --

3          THE COURT:  Just a moment.

4          MR. FIG:  Right.

5          THE COURT:  I want to go very slowly here.

6    Subsection (1), was the trust deed, any assignments of the

7    trust deed by the trustee or beneficiary and any

8    appointment of a successor trustee are recorded.

9          So the first question is:  Was the trust deed

10   recorded?  Is there any issue about the trust deed itself

11   being recorded?

12         MS. LEMOINE:  The original trust deed, Your

13   Honor?

14         THE COURT:  The original trust deed.

15         MS. LEMOINE:  No.

16         THE COURT:  No.  Is there an issue about any

17   assignment of the trust deed having occurred?

18         MR. FIG:  That is the issue, Your Honor.

19         THE COURT:  And your position is that -- I

20   thought I heard you say -- there was no assignment of the

21   trust deed?

22         MR. FIG:  Right.  That is argument, Your Honor.

23         THE COURT:  By the trustee or the beneficiary --

24         MR. FIG:  Correct.

25         THE COURT:  Who was the trustee under the

EXHIBIT 5
PAGE 12

1  original trust deed?

2          MR. FIG:  The trust -- the original trustee was

3  --

4          MS. LEMOINE:  Greenpoint Mortgage funding, Your

5  Honor.

6          THE COURT:  Hmm?

7          MS. LEMOINE:  No?  First American Insurance

8  Company was the trustee, original trustee.

9          THE COURT:  Yeah.

10          MR. BARNES:  First American Title Insurance

11  Company, they were the closing agent, which is generally

12  true.

13          THE COURT:  So did the trustee assign the trust

14  deed?  Does anybody argue that the trustee assigned the

15  trust deed?

16          MR. FIG:  I don't believe so, Your Honor.

17          THE COURT:  Does anybody argue that the

18  beneficiary assigned the trust deed?

19          MR. FIG:  We say it was not assigned, Your

20  Honor, but that's where I think the rubber's going to meet

21  the road.

22          THE COURT:  No, just a moment.  You say it

23  wasn't assigned?

24          MR. FIG:  Correct.

25          THE COURT:  Does anyone have any evidence in

EXHIBIT 5
PAGE 13

1  this record that the beneficiary assigned the trust deed?

2         No evidence, according to Mr. --

3         MS. LEMOINE:  Barnes.

4         THE COURT:  -- Barnes.  So no.

5         Finally, was there -- you, Mr. Fig, say there

6  was an appointment of a successor trustee?

7         MR. FIG:  Yes, Your Honor.

8         THE COURT:  This goes to LSI, or whatever?

9         MR. FIG:  Yes, Your Honor.

10        THE COURT:  And you say that was recorded?

11        MR. FIG:  Yes, Your Honor.

12        THE COURT:  Which is what the statute requires.

13  Does anybody say differently?

14        MR. BARNES:  No, Your Honor.

15        THE COURT:  Then I would have to conclude that

16  under ORS 86.735, the trustee may foreclose.

17        MR. FIG:  That's our position, Your Honor.

18        THE COURT:  And I say I must conclude, not

19  because I take Mr. Fig's position, I'm just taking it, as

20  you can tell, in rather mechanical approaches.  86.735

21  says, "The trustee may foreclose if," and then it gives a

22  set of requirements, and we've just -- by the process of

23  this discussion -- determined that there is no fight about

24  any of those requirements.

25        MS. LEMOINE:  Your Honor, I think, though, there

EXHIBIT  5

\GE  14

1   is some confusion there. You just stated that there was

2   no evidence that the trust deed was assigned, but yet --

3        THE COURT: No, I didn't -- I asked the question

4   and Mr. Barnes said no one's maintaining that the trust

5   deed was assigned.

6        MS. LEMOINE: Okay. So hold on.

7        (Counsel confer)

8        MR. BARNES: I know how to address that.

9        MS. LEMOINE: Okay.

10        MR. BARNES: I can address that.

11        MS. LEMOINE: Okay.

12        THE COURT: Now, wait a minute. You already

13   did. I asked, "Is there any evidence that the trust deed

14   was assigned?" and you said no.

15        MR. BARNES: That's the problem.

16        THE COURT: What do you mean, "That's the

17   problem"?

18        MR. BARNES: Because the trust deed is in favor

19   of a third party who is now out of business. These other

20   defendants are strangers to the transaction.

21        THE COURT: Wait. I don't want to move beyond

22   this statute yet. Maybe never, but not yet. And I asked

23   whether there was any evidence that the -- first, whether

24   the trustee had assigned the trust deed or whether the

25   beneficiary had assigned the trust deed. Mr. Fig said no,

EXHIBIT 5
PAGE 16

1  they haven't.  And I asked you folks, "Any evidence that

2  they have?" and the answer was no.

3          MS. LEMOINE:  And I think, Your Honor, that this

4  might make it clear.

5          If you look at the deed of trust, the deed of

6  trust shows the lender as Greenpoint Mortgage Funding,

7  Inc., which is also the beneficiary and that MERS is the

8  grantee of the security interest -- the security

9  instrument.  But this is GMAC.

10         THE COURT:  No, wait, wait.

11         MS. LEMOINE:  Okay.

12         THE COURT:  This isn't GMAC; isn't this

13  everybody?  This goes back to my point about standing.

14  You are seeking some determination that none of GMAC,

15  MERS, or Executive Services Inc. may do what they're

16  doing, correct?

17         MS. LEMOINE:  Correct.

18         THE COURT:  But we just -- haven't we just

19  concluded that 86.735 has been complied with?

20         MS. LEMOINE:  Go ahead, Mr. Barnes.

21         MR. BARNES:  I don't want to keep going back and

22  forth, though.

23         MS. LEMOINE:  That's okay.  I'm done.  You go.

24         MR. BARNES:  Your Honor, in a literal sense and

25  only a very literal sense, what we've gone through in

EXHIBIT __5__
PAGE __16__

1  these four components, some of which are not relevant to

2  this case, have been complied with by the actions of the

3  parties, however, when you read this, "The trust deed, any

4  assignments of the trust deed by the trustee or the

5  beneficiary," what that's telling us in that statute is

6  that if there are any assignments which are necessary

7  because the original lender is not the one that's seeking

8  to foreclose, that assignment would have to be recorded,

9  as I'm reading this.

10      If any -- the trust deed, any assignments of the

11  trust -- by the trustee or the beneficiary, and any

12  appointment of a successor trustee are recorded in the

13  mortgage records, et cetera.  This situation, because the

14  strangers to the transaction are trying to foreclose

15  necessitate an assignment.  No assignment's been recorded

16  because they never did one, that's the problem.  Otherwise

17  that language would not --

18      THE COURT:  But what require --

19      MR. BARNES:  -- even be in there.

20      THE COURT:  But what requires there to have been

21  anything?  Isn't MERS listed as the beneficiary?

22      MR. FIG:  Yes, Your Honor.

23      THE COURT:  Excuse me?

24      MR. BARNES:  I'm sorry, MERS is not the

25  beneficiary.

*Anderson Assistance* (508) 618-9988

EXHIBIT  5

PAGE  11

1  THE COURT: Well, just a moment. You left out a

2  word which is listed. Doesn't the agreement designate

3  MERS as the -- doesn't the agreement -- doesn't the trust

4  deed designate MERS as the beneficiary?

5  MR. BARNES: It desig -- I'm sorry, were you

6  addressing me, Your Honor, or Mr. Fig?

7  THE COURT: Well, just a moment. Let's all open

8  up our documents.

9  MR. FIG: It's Exhibit 2, Your Honor, to the

10 deposition of Mr. Zeitz, which was filed with the original

11 motion for summary judgment.

12 THE COURT: Deed of trust.

13 MR. FIG: And if you'll turn, Your Honor, to

14 Page 2 of 15 and 3 of 15, that's the -- on the top of the

15 page under Paragraph E, is where --

16 THE COURT: It says who MERS is.

17 MR. FIG: Right, and in that the second sentence

18 says, "MERS is the beneficiary under this security

19 agreement."

20 THE COURT: Right. And it also -- the deed of

21 trust, the opening operative language is, "MERS is the

22 grantee of this security instrument."

23 And then lender is somebody, trustee is

24 somebody, MERS is somebody. And I just note that our

25 trust deed statute refers to a beneficiary, a grantor, a

EXHIBIT 5
PAGE 18

1  trustee, and a trust deed. So why do I care about who the

2  quote, "lender," closed quote is?

3      I understood, Mr. Barnes, you to make the point

4  that, well, but there's a lender here and the original

5  lender was -- was it Greenpoint?

6      MR. BARNES: Greenpoint Mortgage Funding, this

7  is --

8      THE COURT: And that somehow Greenpoint isn't

9  here, and therefore that's a problem.

10     MR. BARNES: Well, there are -- Judge, the

11 recent cases that have come out in the last -- in the

12 space of 58 days in Oregon, by the way, have taken this

13 apart and taken the definition --

14     THE COURT: Do I have those cases in my --

15     MR. BARNES: Yes, you do.

16     THE COURT: Where are they?

17     MS. LEMOINE: I faxed two of them to you on

18 Monday, Your Honor.

19     THE COURT: Yeah, and those are the only ones, I

20 guess, I can consider. They seem to me to be different

21 situations.

22     MR. BARNES: Well, Allman was a different

23 situation under the facts, but the operative language as

24 to defining what a beneficiary is under the Oregon

25 statute, that being the person for whose benefit the trust

EXHIBIT __5__
PAGE __19__

1   deed is given, is carried over into the <u>Breithaupt</u>

2   opinion, which says "That person for whom the trust deed

3   is given, the person who is getting that, for whose

4   benefit, is the one that lends the money."

5        And notwithstanding MERS claiming itself to be a

6   beneficiary, and by the way we left out some of the

7   language in the trust deed, they are not -- because it

8   says right in there, and this is the second page of the

9   deed of trust at the top, Subsection (E). MERS,

10   quote/unquote, is Mortgage Electronic Registration Systems

11   Inc. MERS is a separate corporation that is acting solely

12   as a nominee for the lender.

13        Nominees under the case law cannot be

14   beneficiaries. MERS cannot be a --

15        THE COURT: Which case law are you talking

16   about?

17        MR. BARNES: The case law that we've cited in

18   our memorandum, Your Honor.

19        THE COURT: Which case law? Give me the case

20   that says that under Oregon law that conclusion followed.

21        MR. BARNES: Well, that's what <u>Allman</u> and

22   <u>Breithaupt</u> --

23        THE COURT: No, I'm Breithaupt.

24        MR. BARNES: I know.

25        THE COURT: There must be somebody else here.

EXHIBIT 5
PAGE 20

1        MR. BARNES:  Sorry about that, Your Honor.

2        THE COURT:  That's okay.

3        MR. BARNES:  I'm talking about the <u>Allman</u> case

4 and about <u>Rinegard</u>, the <u>Rinegard</u> case.  It defines what a

5 nominee is, it talks about how that was defined --

6        THE COURT:  Let me hear from Mr. Fig about --

7 you got these cases, right?

8        MR. FIG:  Not that I'm aware of, Your Honor.  I

9 may --

10        THE COURT:  Oh, my goodness.

11        MS. LEMOINE:  I have a fax showing you did.

12        MR. FIG:  And I may have, I don't --

13        THE COURT:  Well, <u>In re Fred Leroy Allman</u> is one

14 case.  And --

15        MR. FIG:  And I've actually looked at the <u>Allman</u>

16 case --

17        THE COURT:  <u>Rinegard-Guirma vs. Bank of America</u>.

18        MR. BARNES:  That one I'm not familiar with.

19        THE COURT:  That's Judge King.

20        MR. FIG:  I can speak to at least the <u>Allman</u>

21 case, Your Honor.

22        THE COURT:  Okay.

23        MR. FIG:  In that case, that was an issue of

24 whether or not MERS was entitled to notice if the lender

25 also received notice --

EXHIBIT 5

PAGE 21

1      THE COURT:  Mm-hmm.

2      MR. FIG:  -- and the Court basically said it's

3  no harm no foul because even if you could act -- I mean,

4  the Court basically said, "Look, either you're acting as a

5  nominee or you're not, but it doesn't matter.  We gave

6  your lender notice, and you're just a pass-through

7  anyway."

8      THE COURT:  Wait.  We -- we, whoever it was that

9  was supposed to supply.  That's the way I read the case.

10  It's not at all relevant to this proceeding.

11      MR. FIG:  And what I think is relevant, Your

12  Honor, and there is another -- and we cited this case in

13  our brief, and this is the case of Stewart, there's three

14  Stewart cases, this is Case No. 2.  And it's a Lexus case,

15  and I have copies of the cases here for counsel and for

16  you, if you --

17      THE COURT:  Okay.

18      MR. FIG:  If you would like copies of it.  But

19  in any event, the Stewart case says -- may I approach,

20  Your Honor?

21      THE COURT:  Yes, you may.

22      MR. FIG:  And I've marked all the cases the same

23  so you're not getting a bracket and a star where nobody

24  else is.

25      What this case was about is plaintiff Stewart

EXHIBIT 5
PAGE 22

1   was suing MERS and US Bank and other parties alleging as

2   similarly to this case that the parties didn't have

3   standing, among other things, to proceed with the

4   foreclosure.

5          THE COURT: Mm-hmm.

6          MR. FIG: And at the very last page of that case

7   -- and the issue was -- it's a little bit different in

8   this case, but I think it's still relevant, the issue was:

9   Did MERS have -- as a beneficiary, could it transfer its

10  rights to US Bank, which was the actual foreclosing party?

11         And what the plaintiff said is, "You can't do

12  that, MERS, because you don't have authority to record any

13  assignments or trust deeds, you're a non-entity, you can't

14  -- none of you have standing to foreclose because the

15  assignment was invalid."

16         And what the judge said in this particular case

17  which just came out in February of this year is the judge

18  focused on the elements of ORS 86.735, as this Court did,

19  and basically he says two things in this case; one,

20  there's no requirement that the foreclosing parties

21  provide or prove up the note and trust deed, which is one

22  of the assertions by plaintiff in this case as well.  I do

23  have the original note and the trust deed is in fact

24  recorded.

25         So there's no requirement under --

EXHIBIT 5
PAGE 23

1      THE COURT:  Have you shown the original note to

2  your opponent?

3      MR. FIG:  I have not.  I have it right here,

4  though, if they'd like to see it.

5      THE COURT:  Why don't you do that?

6      MR. FIG:  And --

7      THE COURT:  I assume a copy of this has been

8  provided?

9      MR. FIG:  Yes, Your Honor, but there's an issue

10  sometimes under whether you have the original and the

11  copies are not sufficient and -- and that's the original

12  note signed by Ms. Niday.  I hope that I pronounce that

13  correctly.

14      In any event, the Court said, "You don't have to

15  prove that up, and there's no requirement under the non-

16  judicial foreclosure statute," and more importantly I

17  think what the topic that we're talking about today, the

18  last sentence there says, "Defendants fully complied with

19  the statutory requirements recording both the assignment

20  and the appointment of the successor trustee on February

21  10, 2009, and therefore they're entitled -- they have

22  standing, they're entitled to foreclose."

23      Here, MERS did not assign it to another party to

24  foreclose, they still remain as the beneficiary, but I

25  believe it's important in the sense that the Court found

EXHIBIT  5
PAGE  24

1  that in fact the parties do have standing, that MERS can

2  act as a beneficiary and assign the trust deed just --

3        THE COURT:  Mm-hmm, mm-hmm.

4        MR. FIG:  -- as MERS as a beneficiary --

5        THE COURT:  Otherwise the assignment would have

6  been --

7        MR. FIG:  Exactly, Your Honor.

8        THE COURT:  -- inoperative.

9        MR. FIG:  So --

10       THE COURT:  A vacuum can't assign something.

11       MR. FIG:  Right.  And so here, a vacuum -- if

12 the Court had said, "No, you can't assign it, then a

13 vacuum can't foreclose."

14       The Court here said, "MERS is an entity, it does

15 have rights, and therefore it can assign it, it has the

16 right to assign the trust deed."  If it has the right to

17 assign a trust deed then you certainly have the right to

18 foreclose on the trust deed.

19       THE COURT:  Mm-hmm, okay.

20       MR. BARNES:  May I?  Thank you.

21       THE COURT:  You may.

22       MR. BARNES:  Answer to your question that was

23 posed before Mr. Fig went off on this.

24       This is the Rinegard case, it came out on

25 October 6th of this year, citing Allman and this is a

EXHIBIT 5
PAGE 25

1    direct quote, "In <u>In re Allman</u>, a case of the United

2    States Bankruptcy Court for the District of Oregon, and by

3    the way --

4            THE COURT:  Could you tell me what page you're

5    on?

6            MR. BARNES:  Yes.  This is on Page 8 of the

7    opinion.

8            THE COURT:  Mm-hmm.

9            MR. BARNES:  First full paragraph.  "The Court

10   described MERS as, quote, more akin to that of a strawman

11   than a party possessing all the rights given to a buyer,"

12   unquote, citation, quoting <u>Landmark Bank</u>, which is the

13   Kansas case.  And this is the operative language:  "The

14   Court considered the meaning of beneficiary under Oregon's

15   trust deed statute as, quote, the person named or

16   otherwise designated in a trust deed as the person for

17   whose benefit the trust deed is given," citing ORS 86.705,

18   Sub (1).

19           The Court then concluded after examining

20   language of the trust deed that is almost identical to the

21   language contained in the deed of trust here that MERS was

22   not, quote, in any real sense of the word -- particularly

23   as defined in ORS 86.705, Sub (1), the beneficiary of the

24   trust deed, unquote.

25           Instead MERS was the nominee and the trust deed

EXHIBIT  5
PAGE  26

1   was for the benefit of the lender. That's from three

2   weeks ago. Citing the Oregon statute and citing the

3   Allman case, which is an Oregon federal case as well.

4       So just because MERS says it's so in the trust

5   deed, the Courts have said, "No, you are not." Oregon has

6   twice.

7       And there other reasons which I can get into if

8   we need to, but Judge, if I may just digress for one

9   moment, I wanted to say this right up front, but we

10   started argument right away: We have not received an

11   answer to our complaint in this case to date. So we're

12   technically not even at issue.

13       THE COURT: Who cares?

14       MR. FIG: And the --

15       THE COURT: Are you suggesting he's not entitled

16   to file a motion for summary judgment before filing an

17   answer?

18       MR. BARNES: I'm saying the case is not at

19   issue.

20       THE COURT: Are you saying that he can't file a

21   motion for summary judgment before he files an answer?

22       MR. BARNES: Sure, he can. I just wanted to

23   bring it to the Court's attention because we are --

24       THE COURT: Well, what's the point?

25       MR. BARNES: All right. Then I withdraw it.

EXHIBIT 5

PAGE 27

1        THE COURT:  I mean, he's not required to file an

2   answer; he can move.

3        MR. BARNES:  Preemptively.

4        THE COURT:  Yeah.  Oh, preemptively, whatever

5   word you want to put on it.  The point is the rules

6   clearly provide he can move.

7        Ms. Lemoine, do you have --

8        MS. LEMOINE:  My understanding is just that it's

9   --

10       THE COURT:  Your counsel is from out of state,

11  you're from in state, I don't mean to disrespect you --

12       MR. BARNES:  It's okay, I'm used to it.

13       THE COURT:  -- but that's how I always

14  understood, you can file a motion --

15       MS. LEMOINE:  Well, my understanding is that

16  it's a motion to dismiss, which is --

17       THE COURT:  No, this is a motion for -- you

18  mean, what you can file before you answer?

19       MS. LEMOINE:  Correct.  And I didn't bring my --

20       THE COURT:  Well, here.

21       MS. LEMOINE:  -- ORCP book with me.

22       THE COURT:  That's real easy.  Get me volume

23  one, I've read this about a hundred times.

24       MR. BARNES:  He can.

25       THE COURT:  What?

EXHIBIT 5
PAGE 28

1      MR. BARNES:  He can do it --

2      THE COURT:  Yes.

3      MR. BARNES:  -- it's just under the

4   circumstances here where all these defenses are being

5   raised --

6      THE COURT:  Defenses.  He's responding to your

7   complaint.  He's saying, "You can't give me facts and law

8   sufficient to proceed."

9      Well, I'm not --

10      MR. BARNES:  It's a non-sequitur at this point.

11      (Court/clerk confer)

12      THE COURT:  Now, what does Judge King do?

13   Because I read this opinion and made a bunch of marks in

14   the margin.

15      "Absent a decision from the Oregon Supreme Court

16   or the Oregon Court of Appeals, and absent further

17   briefing from the parties on this specific issue, I am at

18   least initially persuaded that Rinegard-Guirma has a

19   likelihood of success," that's all he says.

20      MR. FIG:  Your Honor, I have read that case.

21      MR. BARNES:  And granted the injunction.

22      MR. FIG:  And I think what Judge King did in

23   that case is punt.  He's cited case law, and he said, "You

24   know, I really don't need to make this decision at this

25   point."

EXHIBIT 5
PAGE 29

1    THE COURT:  Because all I'm required to do now

2  is to decide whether to let this foreclosure proceed.

3    MR. FIG:  And that's correct, Your Honor, and so

4  he did allow the injunction, I believe, to continue, but

5  basically punted on that issue because he said, "That can

6  be sorted out later."

7    THE COURT:  Mm-hmm.  That's the way I read the

8  case.

9    As deferring, is that opinion rather than the

10  Allman in which he talks about the importance of

11  foreclosure and the importance to the party upon whom the

12  foreclosure is operative, and says, "I'm going to wait, we

13  don't need to decide this, I'm going to wait."

14    But that's not the posture of this case.

15    MR. FIG:  Correct.  As the Court has, I think,

16  properly identified, we've responded to the complaint

17  basically saying, "You can't -- you can't assert a claim

18  against us, you can't prove that we don't have standing."

19    THE COURT:  Mm-hmm.

20    MR. FIG:  And in response to that, we provided

21  proof that we do have standing.

22    THE COURT:  Back to Mr. Barnes or Ms. Lemoine.

23    MR. BARNES:  I'm going to go --

24    THE COURT:  Did I say Barnes?

25    MR. BARNES:  Barnes.

*Anderson Assistance* (508) 618-9988

EXHIBIT 5
PAGE 30

1    THE COURT:  It is Barnes, yes.

2    MR. BARNES:  Yes, Your Honor.

3    THE COURT:  Okay, thank you.

4    MR. BARNES:  I'm going to go back to the point

5  we were talking about before under the definitions, the

6  statutory definitions.

7    The language in that statute that says, "And any

8  assignments," is put there for a reason, and I would

9  proffer to the Court that the reason is, if you've got a

10  stranger to the transaction, a third party who is not the

11  original lender, who is trying to foreclose, you have to

12  show that you, the third party, have the right to do so by

13  a valid recorded assignment, and they don't have one.

14  They're not (indiscernible) -- they're not owed any money

15  on the loan.  MERS is certainly not owed any money.

16    THE COURT:  Now, just a moment, the trustee may

17  foreclose.

18    MR. BARNES:  The trustee is ETS, they're a third

19  party trust deed sale company.

20    THE COURT:  But that's who can foreclose is the

21  trustee, right?

22    MR. FIG:  Right.  And our response to that would

23  be is it's not who owns the commercial paper underlying --

24    THE COURT:  Yeah.

25    MR. FIG:  -- the trust deed --

*Anderson Assistance* (508) 618-9988

EXHIBIT 5
PAGE 31

1        THE COURT:  The trustee -- there's no question

2  we have a trustee here, correct?

3        MR. FIG:  I believe that's correct, yes.

4        MR. BARNES:  Well, you have a substituted

5  trustee --

6        THE COURT:  Yes, but --

7        MR. BARNES:  -- which is a third party trust

8  deed sale company like Northwest Trust Deed Services --

9        THE COURT:  But it doesn't matter, that's -- I

10  mean --

11        MR. BARNES:  -- or Quality Loan Service --

12        THE COURT:  -- you know, that is the way the

13  system works.

14        MR. BARNES:  I totally understand that.

15        THE COURT:  So we have a trustee and the trustee

16  is foreclosing.

17        MR. BARNES:  But the trustee is foreclosing on

18  the presumption that they've complied with that statute

19  and any assignments --

20        THE COURT:  Complied with what statute?

21        But we've already said there are no facts in

22  this record to indicate that 86.735 has not been complied

23  with.

24        MR. BARNES:  Because -- exact --

25        THE COURT:  We know who the trustee is, we know

Anderson Assistance (508) 618-9988

EXHIBIT 5
PAGE 32

1   that LSI claims to be, and of record we have the chain of

2   -- the chain, if you will, back to the original trustee

3   First American Title.  So we know that the trustee is a

4   valid trust -- I mean, their standing is pretty clear.  So

5   why can't they -- that's who is taking this action, and

6   Subsection (1) says, "Was the trust deed recorded?"  Yes,

7   it was.  "Has there been any assignment by the trustee?"

8   Answer:  No.  "Has there been an assignment of the trust

9   deed by any beneficiary?"  Answer:  You say no --

10          MR. FIG:  Correct.

11          THE COURT:  -- you say?

12          MR. BARNES:  I say, Judge, again, I'm looking at

13  this statute, let's look at the peremptory language, and

14  it's conditional, it's not mandatory:  86.735, Foreclosure

15  by advertisement and sale, period.  The trustee may -- not

16  shall -- may foreclose a trust deed by advertisement and

17  sale if, No. 1, the trust deed, any assignments of the

18  trust deed -- what they're trying to say is that --

19          THE COURT:  By the trustee or the beneficiary.

20          MR. BARNES:  Right.

21          THE COURT:  And you've already said there wasn't

22  an assignment by the trustee.

23          MR. BARNES:  Right.

24          THE COURT:  And there wasn't an assignment by

25  the beneficiary.

EXHIBIT 5
PAGE 33

1      MR. BARNES:  So what they're trying to do is use

2  this statute to allow strangers to a mortgage transaction

3  to foreclose on somebody's house.  That's not the intent

4  of this statute, otherwise that assignment language would

5  not be in there, because loans are bought and sold all the

6  time, and they have been since -- I'm assuming -- this

7  statute was enacted.

8      THE COURT:  Okay.  Now, what this converts to

9  is, of course, the assertion that the MERS system is

10  invalid.

11      MR. BARNES:  No.  Wrong.  I'm sorry, I disagree.

12      THE COURT:  Well, I can't understand it any

13  other way.

14      MR. BARNES:  Well, Your Honor, I spent about two

15  and a half hours yesterday again reading the MERS terms

16  and conditions in the standard contract they have with

17  their parties that they contract with.

18      THE COURT:  Excuse me.  Do I have that in this

19  record?

20      MR. BARNES:  It's quite a -- portions of it are

21  quoted in our brief.

22      And specifically, MERS says to the public on its

23  website and as we said in our brief, they agreed not to

24  assert any rights to mortgage loans or properties

25  mortgaged thereby.

EXHIBIT  5
PAGE  34

1          If you claim yourself to be a beneficiary of a

2   trust deed, you're asserting a right to a property

3   mortgaged, that's what you're doing, they're filing --

4          THE COURT:  Well, but --

5          MR. BARNES:  -- their own contract.

6          THE COURT:  All right.

7          MR. BARNES:  And the MERS terms and conditions,

8   which is incorporated in here --

9          THE COURT:  MERS acts as a nominee for other

10  parties, we've got all kinds of agents acting in this

11  picture, don't we?

12         MR. BARNES:  MERS says in its own terms and

13  conditions that MERS -- the MERS system -- shall not be

14  used as a vehicle to create or transfer beneficial

15  interests in mortgage loans, that's what it says.

16         THE COURT:  So?

17         MR. BARNES:  So what they're doing is by

18  creating and making themselves a beneficiary, they are

19  creating a beneficial interest in a mortgage loan which

20  they're telling the world they can't do.  And there are a

21  lot of reasons for that, which relate to the Nebraska

22  case, but they can't do it, but they're doing it anyway.

23  And that's what that whole issue in front of the Nebraska

24  Supreme Court was, when Nebraska wanted them to register

25  as a business entity and have them pay taxes and fees,

EXHIBIT  5
PAGE  35

1  they said "No, we don't originate loans, we don't extend

2  credit, we don't coll -- we're not a debt collector --

3      THE COURT:  Mm-hmm.

4      MR. BARNES:  -- we're none of these things.  We

5  are an electronic tracking agency."  And that's what their

6  lawyer told the Supreme Court of Nebraska.  But then they

7  turn around and go all over the country and they say, "Oh,

8  no, no, no, we are the beneficiary, this mortgage was

9  made, and this trust deed was made for our benefit, and we

10  can assign, and we can transfer interest, and we can do

11  all these things," directly contradictory to what they

12  told the Supreme Court of Nebraska --

13      THE COURT:  But we don't have --

14      MR. BARNES:  -- and directly contradictory to

15  their contract.

16      THE COURT:  -- any assignment here by MERS.

17  MERS hasn't purported to assign this trust deed.

18      MR. BARNES:  But MERS is claiming to be the

19  beneficiary, and --

20      THE COURT:  So what?

21      MR. BARNES:  -- they can't.

22      THE COURT:  So what?  So what?  Under 86.735,

23  where does that cause a problem?

24      MR. BARNES:  It causes a problem because we

25  don't have an assignment which they need to transfer the

EXHIBIT  5
PAGE  36

1  interest to these third parties to foreclose.

2         Judge, how would you --

3         THE COURT:  Wait, wait, wait, wait, wait, wait,

4  wait, wait.

5         "The trustee may foreclose."

6         MR. BARNES:  Right.

7         THE COURT:  Not the beneficiary, the trustee.

8         MR. BARNES:  Right.

9         THE COURT:  "If the trust deed, any assignments

10  of the trust deed," no one's purported to assign the trust

11  deed.  No one is here saying, "I am an assignee of that

12  trust deed, and I claim to now act."

13         MR. BARNES:  So the Court's practical construct

14  --

15         THE COURT:  By the trustee or the beneficiary,

16  but neither the trustee nor the beneficiary has purported

17  to assign the trust deed.  The trustee did step out, the

18  initial trustee did step out of the way, and a new one

19  came in.  But that didn't assign the trust deed.  I just

20  don't see how it fits the statute.

21         MR. BARNES:  So the Court's construction of this

22  statute would be that anybody who is appointed as

23  successor trustee may foreclose, notwithstanding that the

24  agent who they act as a principal for has absolutely no

25  interest in the mortgage, the deed of trust or the note.

EXHIBIT  5
PAGE  31

1      THE COURT:  No.  What I'm saying is, is that the

2  trust deed system as I understand it, contemplates that --

3  and the borrower gets into this system when the borrowing

4  is done -- that there is a beneficiary and the trustee

5  acts for the beneficiary and by statute may act for the

6  beneficiary and has done so here.

7      Now, when the trustee recovers, what obligations

8  the trustee owes to the beneficiary is a matter between

9  them, but I don't see how the borrower, the debtor, the

10  trustor, can interrupt that set of relationships and say,

11  "Wait a minute, you can't foreclose against me because I'm

12  not sure you will do your -- live up to your duty with

13  your beneficiary."

14      MR. BARNES:  Well, Judge, I listened very

15  carefully to what you just told me, and what you said was

16  the trustee is acting for the beneficiary, right?  Did I

17  hear that right?

18      THE COURT:  Well, look what the -- I don't --

19  what I say is really irrelevant --

20      MR. BARNES:  Well --

21      THE COURT:  What counts is the law of Oregon,

22  trustee --

23      MR. BARNES:  Which is --

24      THE COURT:  -- means a person other than the

25  beneficiary to whom an interest in property is conveyed.

EXHIBIT  5
PAGE  38

1    MR. BARNES:  Right.  But what you're saying to

2 me is, is that the practical effect of this statute is to

3 allow the trustee to foreclose on behalf of and for the

4 beneficiary.

5    The claimed beneficiary here is MERS, which by

6 law and contract cannot be a beneficiary.  Therefore, the

7 trustee cannot act --

8    THE COURT:  By law and -- who says -- what

9 Oregon law says they cannot be a beneficiary?

10    MR. BARNES:  Right here.  Rinegard.

11    THE COURT:  What Oregon law?

12    MR. BARNES:  Rinegard interpreting 86.705, Sub

13 (1).

14    THE COURT:  Rinehard doesn't count with me.

15 Rinehard is -- as Mr. Fig said -- punting.  It's not a

16 decision, it's a --

17    MR. BARNES:  So --

18    THE COURT:  -- "We'll wait to decide that."

19    MR. BARNES:  So what I'm --

20    THE COURT:  No, no.  I'm not going to answer

21 questions, Mr. Barnes.

22    MR. BARNES:  I'm not asking any, Your Honor, I'm

23 sorry.

24    THE COURT:  Well, you just did.  Now, go ahead.

25    MR. BARNES:  I was trying to -- I was actually

EXHIBIT 5
PAGE 39

1 asking myself. What I was saying here, Judge, is when the

2 Judge King said and talks about the meaning of beneficiary

3 under Oregon's trust deed statute, and says that the

4 Allman case concluded that MERS is not in any real sense

5 of the word particularly as defined by ORS 86.705(1), the

6 beneficiary, that doesn't count?

7     THE COURT: It doesn't count with me.

8     MR. BARNES: Okay.

9     THE COURT: I don't see in 86.735, regardless of

10 what that statement in Allman was intended to deal with,

11 and isn't Allman the notice provision? Isn't Allman the

12 case involving who gets notice?

13     MR. FIG: Yes, Your Honor.

14     MR. BARNES: It does, but Rinehard's a

15 foreclosure case.

16     THE COURT: I understand, but I'm saying, mixing

17 a "Who gets notice," and "Who is either benefitted or

18 burdened by a failure to get notice," and then building on

19 that to Rinehard to me, they're missing a step. And the

20 big step they're missing is just look at 86.735. This

21 statute says "Trustees can foreclose if," and then there

22 are a set of requirements, and I see on this record

23 nothing that indicates that there has been a failure to

24 comply with 86.735, so I will grant the motion.

25     MR. FIG: Thank you, Your Honor. I'll prepare

EXHIBIT 5
PAGE 40

1   an order.

2          THE COURT: And ask you to prepare an order.

3          (Counsel confer)

4          MR. BARNES: We have an electronic recording of

5   this proceeding?

6          THE COURT: Assuming someone's paid for it.

7          (Off record 12:00 to 12:01 p.m.)

8          THE CLERK: We are back on the record.

9          MR. BARNES: All right. Your Honor, in view of

10  the fact that we will be appealing this decision, I would

11  make an ore tenus motion to have the injunction --

12         THE COURT: A what?

13         MR. BARNES: I'm sorry?

14         THE COURT: A what?

15         MR. BARNES: Oh, ore tenus. An oral motion.

16         THE COURT: Go ahead.

17         MR. BARNES: I'd like to make an ore ten -- o-r-

18  e t-e-n-u-s, an ore tenus motion that there be a stay

19  against any sale pending appeal.

20         THE COURT: That's not a motion for me to appeal

21  with.

22        If you wish to make that motion, you can make it

23  in accordance with the rules of the court. It's not a

24  motion pending before me today upon which your opponent

25  has any opportunity to respond.

EXHIBIT 5
PAGE 41

1        I'm not saying you can't make it, maybe you can;

2    but you can't make it to me today.

3        MR. BARNES:  Okay.  That's fine.

4        MR. FIG:  Thank you, Your Honor.

5        MR. BARNES:  Because I know I have to make it

6    before I go to the appeals court, because if I don't then

7    they're going to skip it back and say make it here first.

8    Thank you, Your Honor.

9        THE COURT:  You're welcome.

10       MS. LEMOINE:  Thank you, Your Honor.

11       MR. BARNES:  Have a good day.

12       (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT  5
PAGE  42

# DECLARATION OF TRANSCRIBER

1

2

3    I, Robyn M. Anderson, of Anderson Assistance, hereby

4 certify that:

5    a.   I am an Official Transcriber for the State of

6 Oregon;

7    b.   that I personally transcribed the electronic

8 recording of the proceedings had at the time and place

9 herein before set forth;

10    c.   that the foregoing transcript totaling 41 pages,

11 consisting of pages 1 through 39 of audio transcription,

12 plus cover page and index, represent an accurate and

13 complete transcription of the entire record of the

14 proceedings, as requested, to the best of my belief and

15 ability.

16    WITNESS my hand at Gresham, Oregon this 21st day of

17 February, 2011.

18                    ANDERSON ASSISTANCE

19

20             /s/Robyn M. Anderson

21             Robyn M. Anderson, Transcriber

22

23

24

25

EXHIBIT __5__

PAGE __43__

IN THE COURT OF APPEALS OF THE STATE OF OREGON

|  |  |
|---|---|
| REBECCA NIDAY (fka REBECCA LEWIS, | ) No. CV-10-02-0001 |
| | ) |
| Plaintiff-Appellant, | ) COA No. A147430 |
| | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE, LLC; et al. | ) |
| | ) |
| Defendants-Respondents. | ) |

### CERTIFICATE OF PREPARATION
### AND NOTICE OF FILING

I, ROBYN M. ANDERSON, certify that I prepared the transcript designated as part of the record for this appeal.

I CERTIFY that the original of this Certificate was filed with the Appellate Court Administrator and copies were served on the trial court administrator and transcript coordinator on February 21, 2011.

I CERTIFY that on February 21, 2011, a copy of the transcript prepared by me and a copy of this Certificate were served on:

1 - CERTIFICATE OF PREPARATION AND NOTICE OF FILING

EXHIBIT _5_
PAGE _ 44_

Elizabeth Lemoine
Attorney at Law
7540 SW Hermoso Avenue
Tigard, Oregon  97223

William Fig
Attorney at Law
1000 S.W. Broadway, Suite 1400
Portland, Oregon  97205

DATED this 21st day of February, 2011.


/s/Robyn Anderson

_____
Robyn Anderson
Anderson Assistance
3351 S.W. Redfern Place
Gresham, Oregon  97080
(503) 618-9938

2 - CERTIFICATE OF PREPARATION AND NOTICE OF FILING

EXHIBIT 5
PAGE 45