# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

**DOUGLAS A. JAMES** and **EILEEN M. JAMES**, Husband and Wife,

      Plaintiffs,

  v.

**RECONTRUST COMPANY**, an Unknown Entity Operating in the State of Oregon, **BAC HOME LOAN SERVICING LIMITED PARTNERSHIP,** a Texas Limited Partnership, **MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**, a Delaware Corporation, **NORTHWEST MORTGAGE GROUP, INC.** an Oregon Corporation,

      Defendants.

Case No.: 3:11-cv-00324-ST

**OPINION AND ORDER**

Terry Scannell
LAW OFFICE OF TERRY SCANNELL
888 S.W. Fifth Avenue, Suite 650
Portland, OR 97204
  Of Attorneys for Plaintiffs

Megan E. Smith
Pilar C. French
LANE POWELL PC
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
  Of Attorneys for Defendants

Robert J. Pratte
FULBRIGHT & JAWORSKI LLP
80 South Eighth Street
2100 IDS Center
Minneapolis, MN 55402
  Of Attorneys for Defendant
  Mortgage Electronic Registration System, Inc.

**SIMON, District Judge**.

## I. INTRODUCTION

In the summer of 2007, Plaintiffs Douglas A. James and Eileen M. James ("Plaintiffs")

obtained a loan, secured by a trust deed, to purchase their home in Clackamas County, Oregon.

When Plaintiffs defaulted on their loan three years later, Defendants ReconTrust Company

("RTC"), BAC Home Loan Servicing L.P. ("BACHLS"), and Mortgage Electronic Registration

System, Inc. ("MERS") began the non-judicial foreclosure process set forth in the Oregon Trust

Deed Act ("ODTA"), Or. Rev. Stat. ("ORS") § 86.705, *et seq.* Plaintiffs filed suit in state court

to stop the foreclosure, and Defendants removed the case to federal court. Dkt. 1. Defendants

then moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 24.

United States Magistrate Judge Janice Stewart issued Findings and Recommendation ("F&R"),

concluding that this court should grant Defendants' motion. Dkt. 41. Plaintiffs filed timely

objections, Dkt. 48, and Defendants responded.  Dkt. 54. Under the Federal Magistrates Act, 28

U.S.C. § 636(b), this court must review *de novo* those portions of Judge Stewart's F&R to which

Plaintiffs object. Judge Stewart's report and the parties' objections and responses place before

me an issue with which courts have been struggling, both in Oregon and nationwide.

The OTDA requires that the trustee or beneficiary of a trust deed publicly record all

assignments of the trust deed in the county or counties where the underlying real property is

located before the trustee may conduct a "foreclosure by advertisement and sale," *i.e.* a

non-judicial foreclosure. ORS § 86.735(1). Unless all such assignments have been publicly

recorded, a foreclosure may occur only by using the more cumbersome, but also more protective,

process of a judicial foreclosure under which the foreclosure is supervised by a judge.

The primary question presented in this case is whether an entity such as MERS may be a "beneficiary" under the OTDA if it is neither a lender nor a successor to a lender. If MERS can be a "beneficiary" under the OTDA in such circumstances, then any assignments of the trust deed that were not publicly recorded and made only among the members of MERS (and privately recorded only within the MERS internal database) would not preclude the availability of a non-judicial foreclosure. If, however, MERS is not a beneficiary under the OTDA, then the existence of any assignments by a trustee or beneficiary that were not publicly recorded in appropriate county files would preclude a non-judicial foreclosure.

Plaintiffs contend that, despite the trust deed's explicit declaration that MERS is the beneficiary, the real beneficiary was first the original lender and then, in turn, each of several successor lenders (or noteholders). As the lender and then the successor noteholders transferred the note and assigned the trust deed, no party recorded these assignments in the county records, according to Plaintiffs. Instead, MERS remained listed in the county records as the only beneficiary until it recorded an assignment to BACHLS, after which BACHLS appointed a new trustee. Plaintiffs argue that, under these facts, Defendants have not satisfied ORS § 86.735(1) and may not non-judicially foreclose.

Defendants respond that the OTDA permits MERS, as the nominee, or agent, for the lender and its successors, to be the beneficiary. Defendants add that the trust deed, which was signed by Plaintiffs, expressly names MERS as the beneficiary. Accordingly, Defendants contend, the lender and successor noteholders did not need publicly to record assignments of the trust deed because MERS, until its assignment of the trust deed to BACHLS, was always the beneficiary. The only assignment that is required, Defendants argue, is the assignment from

MERS to BACHLS, and MERS recorded that assignment. Defendants contend, therefore, that they have satisfied ORS § 86.735(1) and a non-judicial foreclosure may proceed.

The resolution of this case requires statutory interpretation of several provisions of the OTDA and the application of these provisions to MERS and the underlying loan and security documents, all in the context of Oregon real estate finance law. Because MERS is a nationwide entity that appears to use standard language in its real estate documents, some courts have looked for guidance to legal decisions from other states. Care must be taken, however, because different states have different real estate laws, including different recording and foreclosure statutes. Also, some states are "mortgage states," which use mortgages as the principal security instrument for financing real property. Other states, like Oregon, are "trust deed states," which primarily use deeds of trust and a third-party trustee. Further, some states, like Oregon, are "lien theory states," while other states are "title theory states." These differences, more fully explained below, can be outcome determinative in answering a question like the one presented in this case. For these reasons, a legal analysis from one state might not be fully transferable to another state, even though, facially, it may appear to be so.

The short answer to the primary question presented in this case is that, in Oregon, under the definition of "beneficiary" set forth in the OTDA, only an original lender or a successor to the lender may be a beneficiary under a trust deed. Because MERS is neither a lender nor a lender's successor, it is not a beneficiary within the meaning of the Oregon statute, notwithstanding any contractual agreement among the parties in the loan and related security documents declaring that MERS is a beneficiary. This conclusion is based on a statutory interpretation of the OTDA in the context of Oregon's law of real estate finance. It is, therefore, a conclusion that is specific to Oregon. In addition, the court finds that under well-established

Oregon law, a transfer of a note automatically causes an assignment of the trust deed that is associated with that note. Further, ORS § 86.735(1) requires the public recording in county land records of all assignments of the trust deed before a non-judicial foreclosure sale may be held. Accordingly, Plaintiffs have sufficiently stated a claim for relief under ORS § 86.735(1).

The court also concludes that MERS, when authorized by its principal (or principals) to do so, may act as a "nominee," or agent, for the lender and the lender's successors and may make assignments of the trust deed both on the lender's behalf and on behalf of the lender's successors. Finally, the court finds that there is an insufficient factual basis set forth in the complaint to sustain Plaintiffs' general allegations of unauthorized "robo-signing." Thus, the court concludes that Plaintiffs have failed to state claims for relief other than claims based on ORS § 86.735(1). Defendants' motion to dismiss, therefore, is GRANTED in part and DENIED in part, as more fully described below. Before explaining how I arrive at these conclusions, I offer a brief introduction to both MERS and Oregon's law of real estate finance.

## II.  MERS AND OREGON REAL ESTATE FINANCE LAW

### A.    MERS

In a typical financed residential real estate transaction, the purchaser signs two distinct but related documents. One is a promissory note, which is evidence of the purchaser's promise to repay the lender the amount of the loan plus interest. The second is a security instrument, usually a mortgage or a trust deed, which conveys to the lender an interest in the property in order to secure fulfillment of the repayment promise described in the note. *See* 59 C.J.S. *Mortgages* § 204 (2011); G. Nelson and D. Whitman, REAL ESTATE FINANCE LAW § 2.1 (5th ed. 2007).

After a lender has made a loan, it may, and often does, sell both the note and the security instrument on the secondary market.  Such sales are made either to a government-sponsored

enterprise, such as the Federal National Mortgage Association ("Fannie Mae") or the Federal

Home Loan Mortgage Corporation ("Freddie Mac"), or to a private institution. These transfers

on the secondary market help supply capital for home loan lending and are "an important

element of national housing policy." G. Nelson and D. Whitman, REAL ESTATE FINANCE

LAW § 5.27, pg. 531 (5th ed. 2007). Many notes and security instruments are eventually sold to

investment trusts, which bundle them into pools and issue bonds to investors through a process

known as securitization. *See id.* at § 11.3. The transfer of a security instrument is called an

"assignment." *See id.* at § 5.27, pg. 530.

Oregon, like many states, permits, and for some purposes requires, the holder of a

security instrument publicly to record assignments in county land records where the property is

located. *See generally* ORS §§ 86.060 (mortgages), 86.735 (trust deeds), 93.710 (mortgages and

trust deeds). As the sale of loans and their associated security instruments on the secondary

market increased, recording assignments "became cumbersome to the mortgage industry[.]"

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011).[1] To reduce

the need for recording assignments, the industry created MERS. R.K. Arnold, *Yes, There is Life*

*on MERS*, 11 PROB. & PROP. 32, 33 (Jul./Aug. 1997) (MERS "is the result of an industry effort

to reduce the need for mortgage assignments").[2] MERS does not "originate, lend, service, or

invest in home mortgage loans." Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 4.

---

[1] The Ninth Circuit in *Cervantes* expressly noted that it was not deciding a question that is quite similar to the one presented here. *See* 656 F.3d at 1044 ("The legality of MERS's role as a beneficiary may be at issue where MERS initiates foreclosure in its own name, *or where the plaintiffs allege a violation of state recording and foreclosure statutes based on the designation*. . . . This case does not present either of these circumstances and, thus, we do not consider them.") (emphasis added).

[2] At the time this article was published, its author, R.K. Arnold, was Senior Vice President, General Counsel, and Secretary of MERS. *Id.* at 36.

Instead, participants in the mortgage market, such as loan originators, servicers, and investors, may become members of MERS.

When a member of MERS makes a loan for the purchase of real estate, MERS plays two roles. First, MERS is named in the security instrument as the "nominee"[3] of the lender and its successors, and it is listed as "the mortgagee or beneficiary of record" in the local land records. Defs.' Mem. at 5. Second, MERS tracks in its internal database "when the member transfers an interest in a mortgage loan to another MERS member." *Id.* MERS contends that under this arrangement, its members no longer need to record assignments that take place exclusively among the members of MERS. *See* R.K. Arnold at 33.

## B.    Oregon Real Estate Finance Law

In Oregon, financed residential real estate transactions are governed by several distinct sources of statutory and common law. Promissory notes are governed by Article 3 of the Uniform Commercial Code, codified in ORS Chapter 73. *Piatt v. Medford Highlands, LLC*, 173 Or. App. 409, 413 (2001). Oregon permits lenders to secure promissory notes with either a mortgage or a trust deed.[4] Mortgages in Oregon are largely governed by common law, with some

---

[3]  "Nominee" means a "person designated to act in place of another, usu[ally] in a very limited way" or a "party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." BLACK'S LAW DICTIONARY 1149 (Bryan Garner ed. 2009).

[4]  Oregon law also recognizes the land sale contract. *See generally Security Bank v. Chiapuzio*, 304 Or. 438 (1987), *superseded by statute on other grounds as stated in Bedortha v. Sunridge Land Co., Inc.*, 312 Or. 307, 314 n.4 (1991).  This lawsuit does not involve a land sale contract.

statutory requirements. *See* ORS Chapters 86 and 88. Trust deeds are largely governed by the OTDA, with mortgage law providing interstitial guidance.[5]

Before Oregon adopted the OTDA in 1959, residential real estate purchases were financed primarily with loans secured by mortgages. From a lender's point of view, mortgages have two principal drawbacks. First, mortgages may only be foreclosed through a lawsuit with judicial supervision of the foreclosure process, *i.e.,* a judicial foreclosure. ORS § 88.010. Second, either the borrower or a junior lien holder may, by statute, redeem the property up to 180 days after the judicial foreclosure sale. ORS § 18.960, *et seq.*

The OTDA was intended in part to simplify the foreclosure process. *See* Minutes, Senate Judiciary Committee (Feb. 19, 1957) (on file at the Oregon State Archives) (discussing S.B. 172, an earlier version of the OTDA). To achieve this simplification, the OTDA permits a trustee to foreclose the trust deed and sell the property, without judicial oversight, at a public sale following advertisement. This is a non-judicial foreclosure. The OTDA also prohibits a person whose interest the trustee's sale foreclosed and terminated from redeeming the property from the purchaser at the trustee's sale. Or. Laws (1959) Ch. 625 §§ 4, 6, 9, 12.; *see also* ORS §§ 86.735 and 86.770(1).

The legislature complemented the new rights that these provisions afforded to creditors by establishing additional protections for the borrower. Initially, these additional protections

---

[5] These separate bodies of law each employ their own terminology to describe the parties to a transaction. Generally speaking, if "a mortgage is employed, the lender is referred to as the mortgagee and the debtor as the mortgagor. . . . If a trust deed is used, the lender is the beneficiary and the debtor is the trustor, or grantor." G. Platt, *The Uniform Land Security Interest Act: Vehicle for Reform of Oregon Secured Land Transaction Law*, 69 OR. L. REV. 847, 851 (1990). The terminology employed in the law of mortgages is also interchangeable with some of the terminology employed in the OTDA. *See, e.g.,* ORS § 86.715 ("For the purpose of applying the mortgage laws, the grantor in a trust deed is deemed the mortgagor and the beneficiary is deemed the mortgagee.").

included the appointment of a trustee, a limitation on trustee fees, the elimination of deficiency judgments, the right to cure a default, and a variety of notice requirements. *See* Minutes, Senate Judiciary Committee (Feb. 19, 1957); Minutes, House Judiciary Committee (Apr. 16, 1959); Or. Laws (1959) Ch. 625 §§ 2, 4, 6, 10, 13. A law review note written six years after the Oregon legislature enacted the OTDA observed that to "counterbalance the foreclosure advantages given the creditor, the Oregon statute sets forth a detailed procedure designed to protect the debtor. The creditor is favored only as long as he follows the statute." Ronald Brady Tippetts, Note, *Trust-Deed History in Oregon*, 44 OR. L. REV. 149, 150 (1965).

After its passage in 1959, the OTDA continued to balance convenience for creditors with protections for borrowers. In 2003, for example, the legislature established a procedure for interested parties to obtain information from the trustee before a foreclosure sale, and in 2008 and 2009, the legislature provided additional notice protections for borrowers. *See* Or. Laws (2003) Ch. 251 § 2; Or. Laws (2008) Ch. 19 § 20; Or. Laws (2009) Ch. 864 § 1; ORS §§ 86.737, 86.757. In short, the OTDA

> represents a well-coordinated statutory scheme to protect grantors [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor. [The OTDA] confers upon a trustee the power to sell property securing an obligation under a trust deed in the event of default, without the necessity for judicial action. However, the trustee's power of sale is subject to *strict statutory rules* designed to protect the grantor [borrower], including provisions relating to notice and reinstatement.

*Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542 (2006) (emphasis added).

The non-judicial foreclosure process created by the OTDA is elective by the beneficiary of the trust deed. "Upon breach of the obligation secured, the beneficiary may choose between

two methods of foreclosure: (1) non-judicial disclosure, which involves advertisement and sale of the property; or (2) judicial foreclosure, which involves following the procedures available to foreclose mortgages on real property." *Kerr v. Miller*, 159 Or. App. 613, 634 (1999); ORS § 86.710. The beneficiary may also choose to waive the trust deed and sue solely on the note. *See Beckhuson v. Frank*, 97 Or. App. 347, 351 (1989) ("A trust deed beneficiary may elect to sue on the note . . . and thereby waive his priority and security, or he may foreclose on the security and waive his right to collect a deficiency." (footnote omitted)); ORS § 86.735(4).

Under Oregon law, the OTDA and mortgage law differ in five principal ways. First, a loan secured by a trust deed involves three parties, instead of two. The third party is the trustee, who holds the security instrument – a trust deed – in trust for the benefit of the beneficiary. ORS § 86.705(7) (2011). When a loan is secured by a mortgage, however, the mortgagee, rather than a trustee, holds the security instrument – a mortgage. Second, the OTDA permits the trustee to foreclose the trust deed without judicial oversight, that is, by a non-judicial foreclosure. ORS §§ 86.735, 86.755. Third, the OTDA does not provide for a right of redemption after the foreclosure sale. *Compare* ORS § 86.770(1) *with* ORS § 18.960, *et seq.* Fourth, the OTDA contains a variety of detailed notice and recording requirements. *See* ORS §§ 86.735, 86.737, 86.740, 86.745, 86.750. Finally, the OTDA permits the grantor [the borrower] to cure his or her default until five days before the foreclosure sale. ORS § 86.753.

Under both statute and longstanding precedent, Oregon is a "lien theory" state, rather than a "title theory" state.[6] In Oregon, neither a mortgage nor a trust deed conveys legal title to

---

[6] "Under the title theory, legal 'title' to the mortgaged real estate remains in the mortgagee until the mortgage is satisfied or foreclosed; in lien theory jurisdictions, the mortgagee is regarded as owning a security interest only and both legal and equitable title remain in the mortgagor until foreclosure." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 4.1 cmt. a (1997).

the underlying real property to the mortgagee, the trustee, or the beneficiary. A "mortgage conveys no legal or equitable interest in fee or for life to the mortgagee, but merely creates a lien which constitutes security for the debt and grants the mortgagee, upon the mortgagor's default, the right to have the property sold to satisfy the debt." *West v. White*, 92 Or. App. 401, 404, *aff'd*, 307 Or. 296 (1988); *see also* ORS § 86.010. Similarly, a trust deed "is merely a lien on the land as security for the payment of the debt."[7] *Id.*; *see also Kerr v. Miller*, 159 Or. App. 613, 621 (1999).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations in Plaintiffs' Complaint

The essential allegations in Plaintiffs' complaint must be "taken as true and construed in the light most favorable to" Plaintiffs. *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). According to the complaint, in 2007, Plaintiffs signed a promissory note in favor of Defendant Northwest Mortgage Group, Inc. ("NWMG"), secured by a trust deed. First Am. Compl. ("FAC") ¶¶ 11, 13. The trust deed names NWMG as the "Lender" and MERS as the "beneficiary," explicitly stating that "MERS is the beneficiary under this security agreement." Dkt. 15-1, pg. 1.[8] The trust deed, however, also states that "MERS is a separate

---

[7] From its passage in 1959, until it was amended in 1983, the OTDA provided that the trust deed conveyed legal title to the underlying real property to the trustee. *See* Or. Laws (1959) Ch. 635 § 1; Or. Laws (1983) Ch. 719 §§ 1, 2. The Oregon Supreme Court, however, construed the OTDA to create only a lien or encumbrance on the property and not to pass the title away from the grantor. *Sam Paulsen Masonry Co. v. Higley*, 276 Or. 1071, 1075 (1976) ("The provisions relating to trust deeds . . . do not provide that trust deeds are to be considered as distinct from mortgages with respect to liens of this nature. Thus, a trust deed is considered a mortgage on real property. . . . A mortgage of real property creates only a lien or encumbrance and does not abrogate the mortgagor's title to the property.").

[8] Plaintiffs attach several exhibits to their First Amended Complaint. Dkt. 15-1. Exhibit 1 is a copy of the trust deed.

Page 11 – OPINION AND ORDER

corporation that is acting *solely* as a nominee for Lender and Lender's successors and assigns."
*Id* (emphasis added). MERS is not mentioned in the note, and MERS did not provide funds for
the loan. FAC ¶ 19.

NWMG negotiated the note to Countrywide Mortgage, which became BACHLS.
FAC ¶ 15. An investment trust later purchased the note from BACHLS, but BACHLS continued
to hold the note itself, even though it no longer held "any interest in the note or the deed of
trust." FAC ¶¶ 16-17, 21. BACHLS assigned the trust deed to "third parties," and the third
parties ultimately transferred the trust deed to an investment trust. FAC ¶ 20. These assignments
of the trust deed were not recorded in county land records. *Id.* During these transfers and
assignments, the note and the trust deed became separated, so that BACHLS holds the note, but
not the security interest provided by the trust deed. FAC ¶ 21.

In April 2010, Plaintiffs became delinquent on the loan. FAC ¶ 27. MERS assigned the
trust deed to BACHLS, and BACHLS appointed RTC as the successor trustee. FAC ¶¶ 27, 30.
The same signatory, "a so[-]called 'robo-signer,'" signed both the assignment of the trust deed
and the appointment of the successor trustee. FAC ¶¶ 28, 30, 32. RTC executed a Notice of
Default and Election to Sell. FAC ¶ 34.

Plaintiffs filed suit in Clackamas County Circuit Court in February 2011, and Defendants
removed the case to federal court. Dkt. 1. Plaintiffs then filed an Amended Complaint. Dkt. 15.
Plaintiffs assert two related claims for relief: wrongful foreclosure and declaratory relief. In both
claims, Plaintiffs contend that because MERS is not the real beneficiary of their trust deed,
Defendants lack authority to foreclose by advertisement and sale, *i.e.* to non-judicially foreclose
on Plaintiffs' property. Plaintiffs seek damages, an injunction barring non-judicial foreclosure,
and a declaration of rights and obligations.

**B.    Defendants' Motion to Dismiss**

Defendants moved to dismiss. Dkt. 24. They argue that MERS is a proper beneficiary under the OTDA. Defs.' Mem. at 12-17. They also argue the OTDA does not require lenders, in order to be able to use non-judicial foreclosure, to record as an assignment of the trust deed every transfer of the note. Defs.' Mem. at 22-31. In other words, even if MERS is not the beneficiary of the trust deed, Defendants argue that an assignment of a note does not automatically result in an assignment of the trust deed.

**C.    Judge Stewart's Findings and Recommendations**

In her F&R, Judge Stewart recommended that Defendants' motion to dismiss be granted. Dkt. 41. Judge Stewart concluded that MERS is a proper beneficiary. She found that MERS could act as "a designated beneficiary and a nominee for the lender." F&R at 13. She also adopted the reasoning set forth in *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011). Judge Stewart further noted that other courts had "concluded that MERS may serve as a beneficiary if the parties expressly agreed to MERS's role in the Deed of Trust[.]" F&R at 15.

In addition, Judge Stewart concluded that the OTDA did not require a lender to record an assignment of the trust deed each time it, or one of its successors, transferred the note. "Although a transfer or assignment of the note transfers the security interest for the protection of the beneficiary, it is not the same act as 'an assignment of the trust deed by the trustee or the beneficiary' contemplated by ORS [§] 86.735(1)." F&R at 20.

Judge Stewart also addressed Plaintiffs' other claims. She rejected Plaintiffs' "robo-signer" argument, holding that Plaintiffs' allegations were "conclusory." F&R at 23. She noted that a signatory may "wear two hats" and "[t]hat [the signatory in this case] did so is insufficient to prove that she lacked authority to sign either or both documents." Finally, Judge Stewart

rejected Plaintiffs' taxpayer argument on the grounds that Plaintiffs failed to allege facts "to

establish their standing." F&R at 24.

**D.    Plaintiffs' Objections and Defendants' Response**

Plaintiffs filed timely objections to Judge Stewart's F&R. Dkt. 48. Plaintiffs argue:

(1) that MERS does not meet the OTDA's definition of "beneficiary;" (2) that ORS § 86.735(1)

requires the recording of an assignment of the trust deed each time the associated note is

transferred; and (3) that the assignment from MERS to BACHLS was invalid because it was

signed by an unauthorized "robo-signer." Defendants' response urges this court to adopt Judge

Stewart's F&R. Dkt. 54.

## IV.  STANDARDS

Under the Federal Magistrates Act, the court may "accept, reject or modify, in whole or

in part, the findings or recommendations made by the magistrate." Federal Magistrates Act, 28

U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations,

"the court shall make a *de novo* determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of an F&R to which neither party has objected, the Magistrates Act

does not prescribe any standard of review: "There is no indication that Congress, in enacting [the

Magistrates Act], intended to require a district judge to review a magistrate's report[.]" *Thomas*

*v. Arn*, 474 U.S. 140, 152 (1985); *see also United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121

(9th Cir.) (*en banc*), *cert. denied*, 540 U.S. 900 (2003) (the court must review *de novo* a

magistrate's findings and recommendations if objection is made, "but not otherwise"). Although

in the absence of objections no review is required, the Magistrates Act "does not preclude further

review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*,

474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the court review the magistrate's findings and recommendations for "clear error on the face of the record."

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). To survive "a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

## V. DISCUSSION

Plaintiffs' objections and Defendants' response place before this court questions of state law. When "interpreting state law, federal courts are bound by decisions of the state's highest court." *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). The Oregon Supreme Court, however, has not yet had an opportunity to resolve these questions. This court, therefore, "must predict how the [Oregon Supreme Court] would decide the issue[s] using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990).[9]

### A.    MERS Is Not a Beneficiary Under the OTDA

Plaintiffs' first objection is to Judge Stewart's recommended finding that MERS satisfies the definition of "beneficiary" set forth in the OTDA, ORS § 86.705(2) (2011). F&R at 12-17. To resolve whether MERS meets the OTDA definition of "beneficiary," the court must first

---

[9] The court notes that the Oregon Court of Appeals recently heard oral argument in *Niday v. GMAC Mortgage LLC*, Oregon Court of Appeals No. A147430, which is a case that raises several issues similar to the questions addressed in this opinion.

interpret the statutory definition of "beneficiary" under the OTDA and then determine whether MERS's role in the parties' transaction satisfies that definition.

### 1.      Interpretation of ORS § 86.705(2)

Under Oregon law, when interpreting a statute "a court shall pursue the intention of the legislature if possible." ORS § 174.020(1)(a). In *State v. Gaines*, 346 Or. 160 (2009), the Oregon Supreme Court set forth a three-step methodology for determining the legislature's intent. First, the court examines the text and context of the statute. *Id.* at 171. Second, the court may examine the statute's legislative history. *Id.* at 172. Third, if "the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

Thus, the court begins the task of statutory interpretation by looking to a statute's text and context. ORS § 86.705(2) (2011) provides:

> "Beneficiary" means a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who is not the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d).[10]

The text establishes three requirements for a person (or entity) to be a beneficiary under this statute.  A beneficiary: (1) must be named or otherwise designated in the trust deed; (2) as a

---

[10] Before 2012, the word "Beneficiary" was defined in the OTDA at ORS 86.705(1).  In 2011, the Oregon legislature added the phrase "Affordable housing covenant" to the definitions section of the OTDA, among other minor changes, resulting in the definition of "Beneficiary" now appearing at ORS 86.705(2). Or. Laws Ch. 712 § 1 (2011) (effective January 1, 2012). The statutory definition of that word was also slightly changed. In the 2012 definition, the third word was changed from "the" to "a," and the phrase "shall not be" was changed to "is not." The legislature's amendments to ORS § 86.705 apply to trustee's sales for which notice was sent on or after January 1, 2012. Or. Laws Ch. 712 § 5 (2011). No party in this case has argued that this change was material, and these changes do not appear to this court to be material to the questions presented here.

person "for whose benefit the trust deed is given;" and (3) must not also be the trustee under the trust deed unless legally qualified.

Although the meanings of the first and third qualifications are plain from the text, the meaning of the second is not. ORS § 86.705(2) does not explain how the trust deed "benefits" a beneficiary and, thus, further analysis is needed to determine who is a person "for whose benefit the trust deed is given." Other provisions of the OTDA[11] show that the "benefit" of a trust deed is that it secures the repayment of the note. ORS § 86.705(7) (2011) defines "trust deed" as "a deed executed in conformity with ORS 86.705 to 86.795 that conveys an interest in real property to a trustee in trust *to secure the performance of an obligation* the grantor or other person named in the deed owes *to a beneficiary*."[12] (Emphasis added.) ORS § 86.710 also states that the trust deed is given to secure a debt "to a beneficiary." That statute provides: "Transfers in trust of an interest in real property may be made *to secure the performance of an obligation* of a grantor, or any other person named in the deed, *to a beneficiary*." (Emphasis added.) Thus, a trust deed's "benefit" to a beneficiary is that it provides security for "the performance of an obligation" owed to that beneficiary. The Oregon Court of Appeals has reached the same conclusion: A "beneficiary's interest under a trust deed . . . is . . . a lien on the land as security for the payment of the debt." *West v. White*, 92 Or. App. 401, 404, *aff'd*, 307 Or. 296 (1988). Accordingly, ORS § 86.705(2) requires that the "beneficiary" be a person "named or otherwise designated in the trust deed" as a person who receives the benefit of the security that is provided by the trust deed.

---

[11] *See State v. Smith*, 246 Or. App. 614, 619 (2011) ("Context includes other provisions of the statute").

[12] The legislature slightly altered the definition of "trust deed" in 2011. It changed some tenses and word order. These changes did not materially alter the definition. Or. Laws Ch. 712 § 1 (2011) (effective January 1, 2012).

## 2.    The beneficiary is the noteholder (*i.e.* the lender or its successor)

The OTDA and Oregon case law establish that where, as here, the trust deed secures a promissory note, the beneficiary of the trust deed is the noteholder.[13] As described above, a financed real estate transaction typically involves two documents: a security instrument and a note. ORS § 86.705(2) defines "beneficiary" in terms of its relation to the security instrument – the trust deed. It does not expressly state that a beneficiary is also a party to the note. Because a trust deed may secure obligations other than a debt evidenced by a note, the legislature may have decided to express the definition of "beneficiary" in more general terms in order to encompass all possible security arrangements.

Nonetheless, although the term "beneficiary" is not defined by reference to the note, several provisions of the OTDA imply that the beneficiary must be the noteholder. This is most evident in ORS §§ 86.705(7) and 86.710, which are the same statutes that describe the "benefit" of a trust deed. These statutes state that the grantor (*i.e.* the debtor) owes the obligation – that is, the debt – to the beneficiary. Again, ORS § 86.705(7) provides that the trust deed secures "the performance of *an obligation* the grantor or other person named in the deed *owes to a beneficiary*." The words "owes to a beneficiary" signal that the beneficiary is the party that receives repayment of the debt. ORS § 86.710 uses a similar formulation: "Transfers in trust of an interest in real property may be made to secure the performance of *an obligation of a grantor*, or any other person named in the deed, *to a beneficiary*." These statutes envision that the beneficiary is not just the party secured by the trust deed; it is also the party to whom the grantor

---

[13]    A mortgage or a trust deed may secure obligations other than those evidenced by a note. *See* G. Nelson and D. Whitman, Real Estate Finance Law § 2.2 (5th ed. 2007). In cases where the obligation is not a debt evidenced by a note, the beneficiary is not the noteholder, but could be called the obligee or creditor. Because this case involves a note, however, the term "noteholder" best describes the party to whom the obligation of the note is owed.

owes the debt. In the context of notes, the party to whom the grantor owes the debt is the noteholder. *See* 59 C.J.S. *Mortgages* § 204 (2011) ("the note represents and is the primary evidence of the debt" (footnotes omitted)).

Other provisions of the OTDA support this conclusion. ORS § 86.720(1) provides that upon performance of the obligation, the beneficiary shall request that the trustee convey the interests in the trust deed back to the grantor. The unstated but unambiguous assumption embedded in this provision is that the grantor owes the obligation to the beneficiary.[14]

Further evidence that the legislature intended that the beneficiary is the noteholder is found in the absence of a separate definition for noteholder in the statute. ORS § 86.705 defines the principal terms in the OTDA, including the three main parties to a trust deed transaction: the grantor, the trustee, and the beneficiary. The statute does not separately define "lender" or "noteholder." In fact, the term "lender" is not used anywhere in the OTDA, except in a model notice to be sent to grantors.[15] *See* ORS § 86.737. The absence of any separate use or definition

---

[14] Defendants contend that ORS § 86.720(3) "contemplates that the beneficiary and the note owner need not be one and the same by requiring certain notices be provided to both entities 'if different.'" Defs.' Response to Pl.'s Objections ("RTO") at 9. Defendants misunderstand the meaning of that statute. ORS § 86.720(3) provides:

> Prior to the issuance and recording of a release pursuant to this section, the title insurance company or insurance producer shall give notice of the intention to record a release of trust deed to the beneficiary of record and, if different, the party to whom the full satisfaction payment was made.

This statute does not, as Defendants assert, suggest that the beneficiary and the "note owner" might be different parties. Instead, the statute contemplates that the beneficiary may not have recorded an assignment of the trust deed, so that an earlier beneficiary is still the "beneficiary of record." It also contemplates that the full satisfaction payment may be made to an agent of the beneficiary of record, such as a loan servicer. In either instance, the title insurance company or insurance producer must provide notice to both parties.

[15] It seems likely that the legislature preferred that a notice sent to grantors employ the simpler and more common term "lender," rather than the more technical term "beneficiary."

of "lender" or "noteholder" supports the conclusion that the legislature did not intend that the beneficiary and the lender (or the lender's successor) be separate and distinct parties.[16]

In addition, the Oregon Court of Appeals, in a different context, has held that the party owning the note is the beneficiary of the related trust deed. In *Lantz v. Safeco Title Insurance Co. of Oregon*, 93 Or. App. 664 (1988), the trustee of a trust deed received a letter from a person named "Higdon," stating that the note had been paid in full and "requesting reconveyance of the property covered by the trust deed." *Id.* at 666. The letter "was accompanied by the original note and trust deed." *Id.* The trustee fulfilled the request. The plaintiff, Lantz, sued the trustee, claiming that she was the personal representative of the true beneficiary, Moore, and that the grantor (*i.e.* the debtor) had not paid the money due on the note. *Id.* at 666-67. Pursuant to ORS § 86.720(1), only the beneficiary may request that the trustee reconvey the interest in the trust deed to the grantor. The court, therefore, had to decide whether Higdon or Moore was the proper beneficiary.

The court determined that Moore was the beneficiary. In reaching this conclusion, the court found that although Higdon had held the note, Moore owned it. By comparing the statutes

---

[16] Two other provisions in the OTDA suggest that the beneficiary and the lender are necessarily the same party. First, ORS § 86.737 describes a notice that must be sent to grantors in the event that the trustee records a notice of default. ORS § 86.737(4) governs the telephone numbers that must be included on the notice. It states: "Telephone numbers . . . must be toll-free numbers unless the beneficiary: (a) Made the loan with the beneficiary's own money; [and] (b) Made the loan for the beneficiary's own investment[.]" This provision assumes that the beneficiary is the same party that "made the loan," namely, the lender. Second, the definition of "lender" in Oregon's provisions for lender security, codified in ORS Chapter 86, includes "beneficiary." ORS § 86.205(4) provides: "'Lender' means any person who makes, extends, or holds a real estate loan agreement and includes, but is not limited to, mortgagees [and] *beneficiaries under trust deeds*[.]" Although the definitions in ORS § 86.205 are limited to §§ 86.205 to 86.275, the legislature's inclusion of "beneficiaries under trust deeds" in the definition for "lender" is further evidence that the legislature understood that a beneficiary is identical to a lender under the OTDA.

Page 20 – OPINION AND ORDER

governing mortgages to the OTDA, the court determined that the beneficiary is the party who owns the note:

> Defendant argues that, because [Higdon] was the holder of the note and trust deed, it was the beneficiary. ORS 86.140 provides: "The owner and holder of the promissory note referred to in ORS 86.110 is deemed the personal representative of the mortgagee for the purposes of this section." ORS 86.715 provides: "For the purpose of applying the mortgage laws, the grantor in a trust deed is deemed the mortgagor and the beneficiary is deemed the mortgagee." Defendant contends that those statutes, construed together, compel the conclusion that the holder is the beneficiary. However, ORS 86.140 requires that the holder must also be the owner in order to be the beneficiary, and there is no evidence that defendant was the owner.

*Id.* at 667-68. Although this precedent does not perfectly conform to the factual situation present here, it is, nonetheless, instructive because it is the Oregon appellate case that comes closest to addressing the relationship between a beneficiary and a noteholder under the OTDA. This holding is further evidence that under Oregon law, the beneficiary is the party that owns the note, namely the lender or its successor.

There is another reason to conclude that the beneficiary is the noteholder, or the owner of the note. According to Oregon case law reaching back more than a century, the note and its security may not be assigned to separate parties. The latter (*i.e.* the security) is merely an "incident" of the former. *See West v. White*, 92 Or. App. 401, 404, *aff'd*, 307 Or. 296 (1988); *U.S. Nat'l Bank of Portland v. Holton*, 99 Or. 419, 427-429 (1921) (collecting early Oregon cases). An attempt, therefore, to make one party the noteholder and another the beneficiary would result in a "nullity." *See Schleef v. Purdy*, 107 Or. 71, 78 (1923) (the security instrument cannot "be sold separately from the debt itself, and the transfer of the mortgage, without a transfer of the debt intended to be secured thereby, is a mere nullity"); *see also* C. Brown and W. Dougherty, *Assignment of Realty Mortgages in Oregon*, 17 Or. L. Rev. 83, 84 (1938) ("The debt

cannot be assigned to one and the security to another; for, generally speaking, the security

follows the debt.").

Thus, the OTDA and Oregon case law establish that the beneficiary is a person named or

otherwise designated in the trust deed as the person whose debt is secured by the trust deed. In

the context of a note, the OTDA and Oregon case law demonstrate that this person (*i.e.* the

beneficiary) is the noteholder, or the owner of the note; in other words, the beneficiary is the

lender or the lender's successor.

**3.    MERS is not the beneficiary; it is solely the agent of the noteholder**

To determine whether, under the OTDA, MERS is the beneficiary of Plaintiffs' trust

deed, the court must review the trust deed to determine whether it names or otherwise designates

MERS as the party for whose benefit Plaintiffs executed the trust deed. The trust deed states on

its first page:

> (A) 'Security Instrument' means this document, which is dated JUNE 19,
> 2007[.]
> . . .
>
> (C) 'Lender' is NORTHWEST MORTGAGE GROUP, INC.
>
> (D) 'Trustee' is FIDELITY NATIONAL TITLE COMPANY OF
> OREGON. . . .
>
> (E) 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a
> separate corporation that is acting solely as nominee for Lender and
> Lender's successors and assigns. MERS is the beneficiary under this
> Security Instrument. . . .

On page three, the trust deed states:

> The beneficiary of this Security Instrument is MERS (solely as nominee
> for Lender and Lender's successors and assigns) and the successors and
> assigns of MERS. *This Security Instrument secures to Lender: (i) the
> repayment of the Loan*, and all renewals, extensions and modifications of
> the Note; and (ii) the performance of Borrower's covenants and
> agreements under this Security Instrument and the Note. For this purpose,

> Borrower irrevocably grants and conveys to Trustee, in trust, with power
> of sale, the following described property [description of the property].
>
> . . .
>
> Borrower understands and agrees that MERS holds only legal title to the
> interests granted by Borrower in this Security Instrument, but, if necessary
> to comply with law or custom, MERS (as nominee for Lender and
> Lender's successors and assigns) has the right: to exercise any or all of
> those interests, including, but not limited to, the right to foreclose and sell
> the Property; and to take any action required of Lender including, but not
> limited to, releasing and canceling this Security Instrument.

Trust Deed at 3 (emphasis added).

Plaintiffs' trust deed designates NWMG, rather than MERS, as the true or actual beneficiary. This is evident in three ways: First, the trust deed states that it "secures to Lender . . . repayment of the Loan." The benefit of the trust deed (*i.e.* the security for performance of the obligation of the note) flows to the lender, not to MERS. Second, the trust deed provides that MERS is "solely" the nominee (or agent) of the lender. This provision shows that MERS is only an agent and does not, itself, enjoy the direct benefit of the trust deed; the direct benefit belongs to the agent's principal, the noteholder. Finally, the trust deed names NWMG as the lender. Because the lender was the initial noteholder, NWMG was the initial beneficiary.[17]

### 4.    Defendants' arguments

Defendants have argued, and other courts have concluded, that MERS is a proper beneficiary. There are three principal arguments advanced for that conclusion: (1) ORS § 86.705(2) should be interpreted broadly; (2) regardless of the statutory definition of "beneficiary," Plaintiffs contractually agreed to make MERS the beneficiary when they signed the trust deed, which expressly declares that MERS is the beneficiary; and (3) the OTDA triggers

---

[17] Plaintiffs allege that NWMG has since transferred the note. FAC ¶¶ 15-21. Thus, NWMG is no longer the beneficiary and whoever currently owns the note is the beneficiary. The record does not identify the current owner of the note.

a clause in the trust deed that grants MERS all of the rights of the lender. Each argument is addressed in turn.

        **a.**      **ORS § 86.705(2) should be interpreted broadly**

Defendants' first argument is that ORS § 86.705(2) permits the parties to the trust deed to name the beneficiary of their choice, subject only to the qualification that the beneficiary must not also be the trustee. The OTDA, Defendants assert, "expressly authorizes the parties to 'name' or 'designate' the beneficiary of their choice in a trust deed." Defs.' Response to Pl.'s Objections to Judge Stewart's F&R ("RTO") at 9. In support of this interpretation, they note that the OTDA does not "require that the beneficiary also be the holder of the note." *Id*. In addition, they argue that ORS § 86.705(2) contains just a single restriction on who may be the beneficiary: the beneficiary "shall not be the trustee unless the beneficiary is qualified to be a trustee." ORS § 86.705(2).

Several courts have adopted this view. In *Burgett v. Mortgage Electronic Registration Systems, Inc.*, No. 6:09-cv-06244-HO, 2010 WL 4282105 *2 (D. Or. Oct. 20, 2010), for example, the court noted that "the trust deed specifically designates MERS as the beneficiary."[18] *See also Bertrand v. Suntrust Mortgage, Inc.*, No. 3:09-cv-00857-JO, 2011 WL 1113421 *4 (D. Or. Mar. 23, 2011) (finding that language of trust deed made MERS the beneficiary regardless of whether MERS is an "economic beneficiary"); *Nigro v. NW Trustee Servs.*, Josephine County No. 11CV0135 (Or. Cir. Ct. May 11, 2011) (adopting reasoning in *Bertrand*); *Somers v. Deutsche Bank Nat'l Trust Co.*, Clackamas County No. CV11020133 (Or. Cir. Ct. July 6, 2011) ("[I]n bold typeface, MERS is identified as the beneficiary. That MERS and its successors, as the

---

    [18] Although the court in *Burgett* found that MERS was a beneficiary, it also found that "the subsequent lenders/servicers are also beneficiaries as holders of the beneficial interest as the principal of MERS[.]" *Id*. at *3. The *Burgett* court concluded that the "record here does not demonstrate that all the transfers have been recorded," as required by ORS § 86.735(1). *Id*.

named beneficiary, is the nominee of the Lender and its successors is not contrary to Oregon law[.]").

The text of the OTDA, however, does not support this interpretation. Defendants rely on only the first part of ORS § 86.705(2), which states that "'[b]eneficiary' means a person named or otherwise designated in a trust deed. . . ." The statute, however, continues: "as the person for whose benefit a trust deed is given[.]" Defendants' interpretation fails to give effect to the latter part of the definition. Under Oregon's rules of statutory construction, the court may not "omit what has been inserted." *Bolt v. Influence, Inc.*, 333 Or. 572, 581 (2002); *see also Force v. Dep't of Revenue*, 350 Or. 179, 190 (2011) ("Statutory provisions . . . must be construed, if possible, in a manner that will give effect to all of them." (internal quotation marks and citation omitted)). As explained above, the latter part of ORS § 86.705(2) has an important meaning. It provides that the "beneficiary" is the person for whose benefit the trust deed was given.

Defendants' contention that the OTDA permits the parties to "'name' or 'designate' the beneficiary of their choice," is not only unsupported by the text of the statute, it is also so broad as to make the actual statutory definition virtually meaningless. Under Defendants' interpretation, the parties could designate *any* person to be the beneficiary, no matter how remote, disinterested, or obscure, so long as the parties have agreed among themselves. The Oregon Supreme Court would be unlikely to endorse such a broad interpretation. *See State v. Cloutier*, 351 Or. 68, 98 (2011) ("an interpretation that renders a statutory provision meaningless should give us pause"); *State v. Garcias*, 298 Or. 152, 159 (1984) ("court endeavors to avoid interpreting a statute in a manner which will produce absurd results").

Notwithstanding these reasons why Defendants' interpretation is overbroad, Defendants argue that an expansion clause in ORS § 86.705 provides that in some circumstances the

statutory definition of "beneficiary" may be disregarded. ORS § 86.705 introduces the definitions that follow with the phrase, "unless the context requires otherwise." Read with this expansion clause, ORS § 86.705 provides that "beneficiary" means "a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given," "*unless* the context requires otherwise." (Emphasis added.) According to Defendants, the expansion clause demonstrates that "the Oregon legislature . . . expressly permitted the parties to designate the beneficiary of their choice, regardless of whether that beneficiary fell within the [l]egislature's definition of the term[.]" RTO at 10.

The expansion clause, however, does not license the parties to a trust deed to disregard the statutory definitions merely because they have agreed to do so. Modified definitions are only appropriate when necessary "to carry out the legislature's intent regarding the statutory scheme." *Necanicum Inv. Co. v. Employment Dep't*, 345 Or. 138, 143 (2008) (the expansion clause means "that, in some cases, the circumstances of a case may require the application of a modified definition of the pertinent statutory terms to carry out the legislature's intent regarding the statutory scheme"); *see also Astleford v. SAIF Corp.*, 319 Or. 225, 232 (1994) (noting that the expansion clause has been invoked to "to arrive at an answer that best comported with the legislative intent of the scheme as a whole").

Defendants' proposed broad definition of "beneficiary" does not comport with the legislative intent behind the OTDA. Defendants' overly broad interpretation would instead alter the legislature's "well-coordinated statutory scheme" by permitting a party with no direct economic interest in the loan or the security to assume the carefully balanced statutory rights and responsibilities set forth in the statute. For example, pursuant to ORS § 86.720(1), the beneficiary is responsible for ordering the trustee to reconvey the interests described in the trust

deed to the grantor on payment of the obligation. Under Defendants' interpretation, a party with no direct economic interest in, or even knowledge of, the obligation could hold this responsibility. An interpretation of the OTDA that would permit this sort of arrangement does not comport with the legislature's intent "to protect grantors from the unauthorized foreclosure and wrongful sale of property." *Staffordshire,* 209 Or. App. at 542.

### b.    Plaintiffs contractually agreed that MERS is the beneficiary

The second argument advanced by Defendants is that Plaintiffs are contractually bound by the trust deed, in which they expressly agreed that MERS is the beneficiary. Defendants assert that Plaintiffs "agreed MERS would act as the beneficiary under the Deed of Trust. By signing the Deed of Trust, Plaintiffs expressly authorized MERS to act as beneficiary in its capacity as nominee (agent) for the lender and the lender's successors are assigns." RTO at 7. Defendants then argue that the parties' agreement, and not the statute, should govern what party is the proper beneficiary to the trust deed. Some courts have adopted a view similar to this. *See Spencer v. Guar. Bank, FSB*, Deschutes County No. 10CV0515ST (Or. Cir. Ct. May 5, 2011) (borrower designated MERS "the beneficiary when she accepted the benefit of the loan").

Whether MERS is a "beneficiary," however, is determined by statute, not by contract. Under Oregon law, the provisions of the OTDA, including its definitions, form part of the trust deed agreement between the parties. *See Ocean Accident & Guarantee Corp. v. Albina Marine Iron Works*, 122 Or. 615, 617 (1927) ("law of the land applicable thereto is a part of every valid contract"); *see also Rehart v. Clark*, 448 F.2d 170, 173 (9th Cir. 1971) ("existing laws are read into contracts in order to fix the rights and obligations of the parties"). In the event that a provision of the OTDA conflicts with a term of the trust deed, the OTDA provision, rather than the private contract, controls. *See* 11 R. Lord, WILLISTON ON CONTRACTS § 30:24 (4th ed. 1999)

(The "incorporation of existing law may act to supersede inconsistent clauses purporting to define the terms of the agreement. For instance, where a statute regulates the amount the government is to pay for a particular service, the statute controls despite a contract between the government and the provider of the service agreeing to a lower rate."). If the parties intend to invoke the OTDA to govern their rights and responsibilities, they may not contract around its definitions. *Cf. United States v. Lupton*, 620 F.3d 790, 800 (7th Cir. 2010) ("Whether Lupton is considered an 'agent' for purposes of 18 U.S.C. § 666 is determined by that statute, not by the terms of a private contract. Parties cannot contract around definitions provided in criminal statutes[.]").

Defendants argue that this court may not disregard the parties' agreement that MERS is the beneficiary unless the court finds that the trust deed "violates a clear and overpowering Oregon rule of law." RTO at 8 (internal quotation marks omitted). This is not so. The cases Defendants cite for this proposition address whether contracts are void as contrary to public policy. *See, e.g., Harrell v. Travelers Indem. Co.*, 279 Or. 199, 205 (1977) (holding that an insurance contract was not void as contrary to public policy). This court is not holding that the trust deed is void as contrary to public policy, or for any other reason. The court is holding only that the OTDA, not the contract, controls which party is the "beneficiary" under the OTDA for the purposes of applying that statute.

Although Defendants did not advance this specific argument, one might also argue that Plaintiffs agreed to waive the statutory definition of "beneficiary" when they signed the trust deed. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170 (9th Cir. 2006) ("as a general rule, 'a party may waive a benefit of a provision of a statute . . . enacted . . . for his protection.'" (quoting *Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific*

*Hypotheekbank*, 69 F.2d 418, 422 (9th Cir.1934))). In response, however, Oregon law would not permit a waiver in this instance. Under Oregon law, "[s]tatutory rights may be waived, but only to the extent that they serve no broader public policy but are directed solely to the protection of the individual who purports to waive them." *In re Leisure*, 336 Or. 244, 253 (2003). The OTDA's definitions serve a broad and important public purpose and are not solely for the protection of individual borrowers.

Finally, it is worth noting that some statutes explicitly allow parties to contract around a statute. For example, ORS Chapter 90 has several provisions that use the phrase: "unless the parties agree otherwise." Neither that phrase nor a similar one is present in the OTDA, and this omission should be considered to be purposeful. *See generally State v. Rainoldi*, 351 Or. 486, (2011) ("such silence may give rise to an inference that, given that the legislature knows how to include a culpable mental state requirement, the omission of such a requirement was purposeful").

### c.    MERS' right to assume the role of lender

Defendants' final argument follows the reasoning advanced in *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011). In *Beyer*, the court notes that some courts have held that MERS was the beneficiary under Oregon law because "MERS is named in the trust deed as the beneficiary." *Id.* at 1160 (citing, e.g., *Bertrand v. SunTrust Mortgage, Inc.*, No. 09–cv–857–JO, 2011 WL 1113421 (D. Or. Mar. 23, 2011) and *Burgett v. Mortgage Elec. Registration Sys., Inc.*, No. 09–cv–6244–HO, 2010 WL 4282105 (D. Or. Oct. 20, 2010)). The court in *Beyer* also observes that other courts have held that the noteholders, not MERS, were the beneficiaries because "they are the ones designated in the trust deed as the persons for whose benefit the trust deed is given." *Id.* at 1161 (internal quotation marks and citation omitted) (citing, e.g., *U.S. Bank*

*Nat'l Ass'n, N.A. v. Flynn*, No. 11–8011 (Or. Cir. Ct. June 23, 2011) and *Hooker v. Northwest Trustee Servs., Inc.*, No. 10–cv–3111–PA, 2011 WL 2119103 (D. Or. May, 25, 2011)). *Beyer*, however, declined to adopt either view. Instead, the decision in that case concludes that even if the noteholder were the person for whose benefit the trust deed was given, the court would still hold that MERS was the beneficiary under Oregon law for a different reason. *Id.*

The court in *Beyer* held that the OTDA triggered a clause in the trust deed that granted MERS the "right to exercise all rights and interests of the lender." *Id.* The trust deed in *Beyer*, like the trust deed here, provides that the borrower "understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, *if necessary to comply with law or custom, MERS* (as nominee for Lender and Lender's successors and assigns) *has the right: to exercise any or all of those interests*[.]" *Id.* (emphasis added) (for brevity, this passage will be referred to as "the law or custom clause"). The court in *Beyer* states that the trust deed could not comply with law or custom unless MERS was the beneficiary. According to the court, the "trust deed repeatedly calls MERS the beneficiary, a statement which would not comply with law or custom unless MERS's powers were expanded to include the right to receive payment of the obligation. For this reason, I find the clause triggered[.]" *Id.* Once the law or custom clause is triggered, according to *Beyer*, MERS "has the right to receive payment of the obligation" and becomes the beneficiary. *Id.*

For several reasons, I respectfully decline to adopt the reasoning of *Beyer*. First, *Beyer*'s discussion of the law or custom clause does not persuade me. The court in *Beyer* interprets this clause to grant "MERS the right to exercise all rights and interests of the lender." *Id.* at 1161. But when the clause states that MERS may "exercise any or all of *those interests*," the phrase "those interests" only refers back to the interests described earlier in the same sentence: "the interests

granted by Borrower in this Security Instrument[.]" The interests granted by the borrower are set forth in the trust deed on page three, the same page as the law or custom clause. The trust deed states that the "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property[.]" Construing these descriptions together, the law or custom clause permits MERS, as an agent of the lender, to exercise the power of sale on property. The phrase "those interests" only refers to the interests granted by the borrower in the trust deed; it does not refer to rights granted to the noteholder by the note, such as the right to receive payments due on the loan. The law or custom clause does not, therefore, permit MERS to accept payments on the note and, thus, does not make MERS either the noteholder or the beneficiary.[19] Moreover, elsewhere MERS has expressly admitted that it has no right to receive payments on the note. *See, e.g., Mortgage Elec. Registration Sys. Inc. v. Neb. Dept. of Banking & Fin.,* 704 N.W.2d 784, 787 (Neb. 2005) ("MERS argues that it does not own the promissory notes secured by the mortgages *and has no right to payments made on the notes.*") (emphasis added).

Further, *Beyer's* statement that "MERS has the right to receive payment of the obligation," in addition to being inconsistent with what MERS itself concedes, invites a variety of incongruous applications. Relying on *Beyer*, a borrower could start sending her payments to MERS, rather than to the actual noteholder (or its designee, a loan servicer). Alternatively, MERS could challenge the noteholder's right to receive payment. These scenarios undermine *Beyer's* statement that MERS has the right to receive payment on the note and, thus, is a noteholder or beneficiary of the trust deed.

---

[19] The law or custom clause also does not permit MERS to assume the beneficial interest in the trust deed. The clause states that MERS may, "as nominee for Lender and Lender's successors and assigns," *exercise* the *interests* granted by the borrower. The clause does not state that MERS may assume the noteholder's right to the security provided by the trust deed. In fact, the clause repeats, and thus emphasizes, that MERS is "solely" a nominee for, or agent of, the lender.

In addition, in *Beyer* the "proof" that MERS is the beneficiary seems to be dependent on the premise that MERS *must be* the beneficiary. According to the trust deed, the law or custom clause is only triggered if it is *necessary* for MERS to have additional rights to comply with local law or custom. Yet, according to *Beyer*, the only reason why it would be necessary for MERS to have additional rights (and to be the beneficiary) is because it is necessary for MERS to be the beneficiary in order for there to be a non-judicial foreclosure. Stated another way, *Beyer* relies on the premise that MERS must be the beneficiary in order to prove the conclusion that MERS is the beneficiary. This reasoning, however, is not persuasive. *See, e.g. Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1225 (3d Cir. 1976) ("The 'proof' assumes the answer rather than proving it.").

The conflict between the provision of the trust deed stating that MERS is the beneficiary and the statutory provisions in the OTDA need not be resolved by resorting to the law or custom clause. As discussed above, the proper resolution is to decide, as the OTDA directs, what party is named or designated in the trust deed as the person for whose benefit the trust deed was given, irrespective of what party the trust deed says is the beneficiary. Resolved in this way, there is no need to presume that MERS must be the beneficiary.

To summarize, this court is unconvinced by the arguments presented that MERS is the beneficiary of the Plaintiffs' trust deed. MERS did not make the loan to Plaintiffs, and the trust deed does not secure MERS in the event of Plaintiffs' default. MERS is nothing more than an agent (or nominee) for the real beneficiary, which is the lender or its successor.[20]

---

[20] Plaintiffs also argue that because MERS is not the real beneficiary, it lacked the authority to assign the trust deed to BACHLS. *See* FAC ¶ 42, paragraphs B-D. The court's conclusion that MERS is not the beneficiary of the trust deed does not, however, establish that MERS lacked authority to assign the trust deed. The OTDA does not forbid an agent, when acting with authority and on behalf of its principal, the beneficiary, from making assignments,

**B.    Recording Assignments of the Trust Deed**

Plaintiffs' second objection is to Judge Stewart's finding that all assignments of the trust

deed were recorded. Pl.'s Obj. at 33; F&R at 17-22. ORS § 86.735(1) provides that a trustee may

not conduct a non-judicial foreclosure unless the "trust deed, any assignments of the trust deed

by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the

mortgage records in the counties in which the property described in the deed is situated." In their

complaint, Plaintiffs allege that their initial lender, NWNG, transferred its interest in Plaintiffs'

loan to Countrywide Mortgage, a predecessor to BACHLS, and that BACHLS later sold the note

and assigned the trust deed to an unnamed investment trust. FAC ¶¶ 15-21. Plaintiffs allege that

Defendants failed to record these, and perhaps other, assignments of the trust deed: The "[d]eed

of [t]rust has been assigned multiple times in order to attempt to place it in an investment trust

without the recording of those assignments as required by ORS [§] 86.735(1)." FAC ¶ 42; *see*

*also* FAC ¶ 45. This allegation forms a central basis for both of Plaintiffs' claims for relief. If

Defendants and others have failed to record required assignments of the trust deed, Defendants

may not non-judicially foreclose.[21]

Defendants do not challenge Plaintiffs' allegations that NWMG sold the note to

Countrywide Mortgage, and that BACHLS, Countrywide's successor, later sold the note to an

investment trust. Instead, Defendants contend that these allegations are irrelevant because

---

recording those assignments, appointing a successor trustee, or doing anything else that a
beneficiary (as principal) may do on its own. *See* RESTATEMENT (THIRD) OF AGENCY
§§ 2.01-2.03 (2006). The trust deed expressly states that MERS is the nominee of the lender and
the lender's successors, and Plaintiffs have not alleged any facts showing that MERS was not
acting as an authorized agent for each of the successive beneficiaries. To that extent, Plaintiffs'
allegations in FAC ¶ 42, paragraphs B-D fail to state a claim upon which relief may be granted
and are dismissed.

[21] This conclusion, however, would not preclude Defendants' right to pursue a judicial
foreclosure, which is a foreclosure proceeding supervised by a judge.

Page 33 – OPINION AND ORDER

ORS § 86.735(1) requires parties to record only assignments of the trust deed, not transfers of the note. RTO at 16. Defendants argue that MERS, not NWMG and its successors, held the beneficial interest in the trust deed, until it assigned that interest to BACHLS: "MERS remained the beneficiary of the [d]eed of [t]rust, as nominee for the lender and the lender's successors and assigns, from origination until the assignment to BACHLS." RTO at 16. Defendants conclude, therefore, that they recorded the only assignment of the trust deed that ORS § 86.735(1) required: the assignment from MERS to BACHLS. RTO at 16.

The court disagrees. As explained above, the noteholder, not MERS, is the beneficiary of the trust deed. Thus, NWMG, not MERS, was the initial beneficiary of the trust deed. Furthermore, while Defendants are correct that the OTDA does not require the recording of transfers of the note, Oregon law provides that the transfer of the note necessarily causes an assignment of the security instrument, even if the security instrument is not formally assigned. *Schleef v. Purdy*, 107 Or. 71, 78 (1923) ("transfer of the note, without any formal transfer of the mortgage, transfers the mortgage"); *see also First Nat'l Bank of Oregon v. Jack Mathis Gen. Contractor*, 274 Or. 315, 321 (1976) ("the assignment of a debt carries with it the security for the debt"); *West v. White*, 92 Or. App. 401, 404, *aff'd*, 307 Or. 296 (1988) (discussing a note secured by a trust deed, assignment of "a note carries with it a security interest in real property" (internal citation omitted)).[22] When NWMG transferred the note to BACHLS, that transfer automatically and necessarily assigned and transferred NWMG's beneficial interest in the trust deed to

---

[22] This is the rule not just in Oregon, but almost universally. "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." *Carpenter v. Longan*, 83 U.S. 271, 275 (1872); *see also* G. Nelson and D. Whitman, REAL ESTATE FINANCE LAW § 5.27 (5th ed. 2007) ("The obligation is correctly regarded as the principal thing being transferred, with the interest in the land automatically attached to it in an extremely important, but subsidiary, capacity.").

BACHLS. ORS § 86.735(1) does not require the recording of the transfer of the note. It does,

however, require the recording of the assignment of the beneficial interest in the trust deed.

Judge Stewart reached a different conclusion in the F&R. She acknowledged Oregon

precedent holding that transfers of a note also assign the trust deed's "security interest" to

successive noteholders. F&R 19-20. Judge Stewart held, however, that the assignment of the

trust deed's security interest by the transfer of the note is not "the same act as assignment of the

trust deed by the trustee or the beneficiary contemplated by ORS [§] 86.735(1)." F&R at 20. The

F&R correctly concludes that two parties can hold separate legal and beneficial title to the same

trust deed, but then, in my opinion, incorrectly applies that conclusion in this case.

MERS claims to hold "legal title"[23] to the trust deed, while the noteholder holds

"equitable title"[24] to that security interest.[25] *See* Trust Deed at 3 ("MERS holds only legal title to

the interests granted by Borrower in this Security Instrument"). In accepting this claim, Judge

Stewart relies on the reasoning set forth by the Minnesota Supreme Court in a case cited by

Defendants, *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487 (Minn. 2009).

---

[23] "Legal title" means a "title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." BLACK'S LAW DICTIONARY 1622 (Bryan Garner ed. 2009).

[24] "Equitable title" means a "title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." BLACK'S LAW DICTIONARY 1622 (Bryan Garner ed. 2009).

[25] It is important to note that the discussion that follows concerns title to the security instrument, the trust deed, *not* title to the property. As stated in the introduction, a trust deed does not convey legal or equitable title to the property; the borrower retains both until foreclosure. A trust deed conveys only "an interest in real property." ORS § 86.705(7). This distinction between title to the trust deed and title to the real property is confusing because the terms "legal title" and "equitable title" are more commonly used to describe title to land (or water), rather than to describe title to a security instrument. *See Klamath Irrigation Dist. v. United States*, 348 Or. 15 (2010) (legal and equitable title to water rights). Nonetheless, as explained below, it is not unreasonable to apply the terms "legal title" and "equitable title" to trust deeds.

"The *Jackson* court," Judge Stewart wrote, "ultimately and, in this court's view, correctly held that the transfer of the promissory note, which carries with it the security instrument, is not an assignment of legal title that must be recorded for purposes of a non[-]judicial foreclosure." F&R at 22.

In evaluating this conclusion, however, it is necessary to review in some detail the Minnesota Supreme Court's reasoning in *Jackson* and the Minnesota law upon which it is based. The issue in *Jackson* was, in some ways, similar to the issue presented here. Minnesota's mortgage laws require the mortgagee to record assignments of the mortgage before there may be a non-judicial foreclosure. 770 N.W.2d at 495-96. Furthermore, Minnesota common law, like Oregon common law, holds that transfer of the note automatically assigns the mortgage. *Id.* at 494. As here, MERS was listed on the mortgage as holding "legal title" to the security instrument. *Id.* at 493. Also, as here, MERS was not the noteholder. *Id.* at 492. The question confronting the Minnesota Supreme Court in *Jackson*, as here, was whether the noteholder was required to record every assignment of the mortgage made when the note was transferred before a non-judicial foreclosure may occur. *Id.* at 495-96.

The court in *Jackson* held that Minnesota law did not require the noteholder to record assignments of the mortgage that were made when the note was transferred. *Id.* at 501. To reach this conclusion, that court found that under Minnesota law, one party could hold "legal title" to a mortgage and another, distinct party could hold "equitable title" to the same mortgage. *Id.* at 500. Transfer of the note, the *Jackson* court found, only assigned, or transferred, the equitable title. *Id.* Minnesota's recording laws, the court also found, did not require the mortgagee to record assignments of equitable title, only assignments of legal title: An "assignment of only the promissory note, which carries with it an equitable assignment of the security instrument, is not

an assignment of legal title that must be recorded for purposes of a foreclosure by advertisement." *Id.* at 500-01.

The underlying F&R in this case applied the same reasoning, which was urged by Defendants, without recognizing a critical difference: the *Jackson* case dealt with mortgages, not trust deeds. Mortgage transactions typically involve just two parties: a borrower, who is called the mortgagor, and a lender (or the lender's successors), who is called the mortgagee. In a mortgage transaction, the mortgagor gives the mortgage to the mortgagee and the mortgagee enjoys the benefit of the mortgage, which is security on the loan. Trust deed transactions, however, introduce a third party: the trustee. In a trust deed transaction, the borrower (who is analogous to the mortgagor) gives the trust deed (which is analogous to the mortgage) to the trustee, not to the beneficiary (who is analogous to the mortgagee). The beneficiary enjoys the benefit of the trust deed, but does not hold legal title to the trust deed.

*Jackson*'s conclusion that MERS may hold legal title to a mortgage, thus, does not apply to trust deeds in Oregon. 770 N.W. 2d at 498-99. Although Oregon case has discussed which parties hold legal and equitable title to trust deeds in the context of the OTDA, in trust arrangements in Oregon, the trustee typically holds legal title to the subject of the trust and the beneficiary holds equitable title. "When a trust is created, the legal title is vested in the trustee. . . . 'A trust implies two estates – one legal, and the other equitable. It also implies that the legal title is held by one person, *the trustee*, while another person, the *cestui que* trust [the beneficiary], has the beneficial interest.'" *Morse v. Paulson*, 182 Or. 111, 117 (1947) (quoting *Allen v. Hendrick*, 104 Or. 202, 223 (1922)) (emphasis added). Under the OTDA, therefore, the trustee holds legal title to the trust deed and the beneficiary holds equitable title to the trust deed. Because MERS is neither the trustee nor the beneficiary, it holds no title at all.

According to *Jackson*, Minnesota law does not require the recording of equitable assignments of a mortgage. Unlike Minnesota law, however, the OTDA requires the recording of assignments of both legal and equitable title to the trust deed. ORS § 86.735(1) expressly requires the recording of two separate events.[26] First, the statute requires that "any assignments of the trust deed by the trustee or the beneficiary" be recorded. Second, the statute requires that "any appointment of a successor trustee" be recorded. The second clause, which requires the recording of any "appointment of a successor trustee," means the transfer of the trust deed from one trustee to another must be recorded. Because the trustee holds legal title to the trust deed, this clause addresses the assignment of legal title. The first clause, "assignment of the trust deed," then, must refer to the assignment of the beneficial interest in the trust deed. If "assignment of the trust deed" only referred to assignments of legal title to the trust deed, it would effectively mean the same thing as "appointment of a successor trustee." Oregon courts, however, must attempt to avoid redundancy when interpreting a statute. *State v. Kellar*, 349 Or. 626, 636 (2011). ORS § 86.735(1), therefore, requires the recording of assignments of both legal and equitable title, which is different from the law in Minnesota according to *Jackson*. Further, because the noteholder, not MERS, is the beneficiary, ORS § 86.735(1) requires the recording of an assignment of the beneficial interest for each transfer of the note.

The Minnesota Supreme Court's decision in *Jackson* shows how Minnesota law dealing with mortgages differs from Oregon law dealing with trust deeds.[27] It does not, however,

---

[26] ORS § 86.735(1) also requires the recording of the trust deed itself, but that is not at issue in this case.

[27] Even if the present case involved a mortgage rather than a trust deed, it is unlikely that the Minnesota Supreme Court's decision in *Jackson* would be applicable here. The *Jackson* decision is based in part on Minnesota case law holding that the "mortgagee of record does not lose legal title when the mortgagee transfers interests in the promissory note." 770 N.W.2d

establish that a non-judicial foreclosure in Oregon may be conducted without the recording of

every assignment of the trust deed, whether legal or beneficial (equitable). ORS § 86.735(1)

requires the recording of both types of assignments.

**C.    Plaintiffs' Other Arguments**

Plaintiffs also object to Judge Stewart's finding that Plaintiffs failed to state a claim that a

the final assignment of the trust deed and the appointment of the successor trustee were signed

by an unauthorized "robo-signer." Pl.'s Obj. at 36-37; FAC ¶¶ 28-32; F&R 22-23. To survive a

motion to dismiss, Plaintiffs' complaint must state sufficient factual matter to allow "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The court agrees that Plaintiffs have not alleged sufficient facts to allow the court to find

that there was an improper, or unauthorized, execution of the assignment of the trust deed or

appointment of the successor trustee. The mere fact that the same person signed both documents

does not establish, or even make likely, that the person lacked authority to execute the

documents. As Judge Stewart correctly explained, an agent "can wear two hats on behalf of both

---

at 498. That, however, is not the law in Oregon. In *Barringer v. Loder*, 47 Or. 223 (1905),
Barringer was the mortgagee of record for a property purchased by Hayden. *Id.* at 224. Barringer
indorsed the note to his ex-wife and transferred both the note and the mortgage to her. *Id.* Neither
Barringer nor his ex-wife recorded an assignment of the mortgage, thus Barringer remained the
mortgagee of record. Barringer subsequently sold, even though he did not possess, the note and
mortgage to Loder. *Id.* at 225. Barringer executed an assignment of the mortgage to Loder, and
Loder recorded the assignment. *Id.* at 225-26. The court was confronted with question of "who
acquired the better title to the note and mortgage in suit, [Barringer's ex-wife] or Loder?" *Id.* at
226. The court found that Barringer's ex-wife had acquired both the note and the mortgage and
Loder had "acquired no title." *Id.* at 230. The court reasoned that indorsement of the note to
Barringer's ex-wife assigned the mortgage. *Id.* at 227-29. The implication in the Court's holding
is that by indorsing the note to his ex-wife, Barringer divested himself of all title to the mortgage,
even though he remained the mortgagee of record. Thus, it appears that under Oregon law
transfer of the note assigns both legal and equitable title to the mortgage. This is different from
the law in Minnesota, according to the court in *Jackson*.

BACHLS and MERS." F&R at 23. Finally, Plaintiffs concede that they have not alleged facts sufficient to establish that they have standing on their taxpayer claim. Pl.'s Obj. at 37.

## D.    Defendants' Equity Argument

In their Response, Defendants renew their argument made before Judge Stewart that Plaintiffs failed to allege that they could cure their default. RTO at 31-33. Judge Stewart rejected this argument. *See* F&R at 6-10. Although Defendants did not file objections to Judge Stewart's F&R, the court has reviewed this issue and adopts Judge Stewart's recommendation.

## VI.  CONCLUSION

As Judge Panner stated in *Hooker*, non-judicial "foreclosure of one's home is a particularly harsh event[.]" *Hooker v. Nw. Trustee Servs., Inc.*, No. 10-3111-PA, 2011 WL 2119103 *6 (D. Or. May 25, 2011). And as Judge Alley observed in *McCoy*, it is reasonable to require that "the interest of the beneficiary is clearly documented in a public record" before permitting a foreclosure to proceed without judicial supervision. *In re McCoy*, 446 B.R. 453, 458 (Bankr. D. Or. 2011). I agree with both Judge Panner and Judge Alley in those cases. Moreover, the Oregon legislature has set forth in extensive detail in the OTDA how a non-judicial foreclosure may proceed and the circumstances that are required in order for it to occur. *See Staffordshire,* 209 Or. App. at 542 (the OTDA "represents a well-coordinated statutory scheme"). If the well-coordinated balance of statutory rights and responsibilities contained in the OTDA are to be altered, that is a matter for the legislature to decide.

Finally, it is important to emphasize that the court's holding in this case applies only to the requirements set forth in the OTDA to conduct a non-judicial foreclosure, or a "foreclosure by advertisement and sale." Following a default in payment, Defendants may still initiate a judicial foreclosure on the secured property by filing a lawsuit. If they choose to do so, such a

judicial foreclosure is governed by the law of mortgages, and ORS § 86.735(1) does not apply. *Kerr v. Miller*, 159 Or. App. 613, 634 (1999) (judicial foreclosure of a trust deed "involves following the procedures available to foreclose mortgages on real property"). All that this court's opinion holds is that all of the statutory requirements of the OTDA must be satisfied before a non-judicial foreclosure may proceed under that law.

Defendants' motion to dismiss, Dkt. 24, is GRANTED in part and DENIED in part, as follows: Defendants' motion is GRANTED as to Plaintiffs' first claim for relief, FAC ¶ 42, paragraphs (B), (C), and (D), and Plaintiffs' second claim for relief, FAC ¶ 45, paragraph (D). Defendants' motion is DENIED as to Plaintiffs' first claim for relief, FAC ¶ 42, paragraph (A) and Plaintiffs' second claim for relief, FAC ¶45, paragraphs (A), (B), (C), and (E).

IT IS SO ORDERED.

Dated this 29th day of February, 2012.

Michael H. Simon
United States District Judge